## Case No. 2,502.

### CASSEL v. DOWS et al.

[1 Blatchf. 335; 1 Liv. Law Mag. 193.] [1]

Circuit Court, S. D. New York. Oct. Term. 1848.

BILL OF EXCHANGE—ACTION BY HOLDER —STRIKING OUT ENDORSEMENTS—ACCEPTANCE — PROMISE TO ACCEPT.

1. Where the endorsements on a bill of exchange, subsequent to that of the payee, were made for the purpose of transmitting and collecting the paper, they may be stricken out at the trial, in a suit by an endorsee.

2. Even if the endorsements were made for value, yet the suit may properly be brought in the name of the party who is the owner of the paper at the time of bringing the suit, whether the endorsements be stricken out at the trial or not.

3. A bill was protested for non-acceptance, and also for non-payment: a qualified acceptance was written on the bill at the date of the latter protest, to the amount of the proceeds of certain property against which the bill was drawn: the proceeds were afterwards paid and receipted on the bill: Held, that they were not accepted in satisfaction but only as far as they would go.

4. A letter written within a reasonable time before or after the date of a bill of exchange, describing it in terms not to be mistaken, and promising to accept it, is a virtual acceptance, binding on the person who makes the promise, if the bill be taken on the credit of the letter by a person to whom it is shown.

5. Where, however, the letter has no reference to the particular bills to be drawn, but is a general authority to draw at any time and to any amount, against property to be shipped, the party writing it cannot be held as acceptor of a bill drawn under it.

6. The letter may however be regarded as a promise to accept the bill, and the writer of it may be sued on such promise by any person who may have taken the bill on the credit of the promise.

[1] [Reported by Samuel Blatchford, Esq., and here reprinted by permission. 1 Liv. Law Mag. 193, contains only a partial report.]

At law. This was an action [by James W. Cassel against David Dows and Ira B. Cary] on the following bill of exchange:

"St. Louis, Mo. March 10th, 1846. J. W. C. Ninety days after date of this my original bill of exchange, (duplicate of same tenor and date unpaid,) pay to the order of Andrew Huston, five thousand dollars, value received, and charge the same to account of your obt. se't. Andrew Huston. To Messrs. Dows & Cary, New-York.
(Endorsed.)
"Pay W. G. W. Gano, Cashier, or order,
"Andrew Huston.
"W. B. Taylor, Jr." (Erased.)
"Pay C. J. Stedman, Esq., or order,
"W. G. W. Gano, Cas." (Erased.)
On the face of the bill was written the following acceptance: "We accept the within draft, for so much of the amount therein mentioned, ($5000,) as the nett proceeds of one hundred and eighty-five casks of hams, against which it was drawn, shall amount to, after deducting commissions and all charges, and for no more, payable when the nett proceeds shall be received by us in cash, and the amount of such nett proceeds ascertained. New-York, June 11, 1846. Dows & Cary." On the back of the bill was the following receipt: "Received, New-York, October 13th, 1846, from Dows & Cary, their check for thirty-eight hundred and sixty-two 51-100 dollars, being in full for the nett proceeds of the within named 185 casks of hams, for which this draft was accepted by said Dows & Cary, as per their account of sales rendered. For C. J. Stedman, J. B. Varnum."

The plaintiff was a citizen of Ohio, and the defendants were citizens of New York, composing the firm of Dows & Cary. The declaration contained a count against the defendants as acceptors, two counts on their promise to accept drafts drawn against consignments of western produce to them by the owner, and the usual money counts. The defendants pleaded the general issue and payment, and gave notice of set-off. The cause was tried at New-York before Mr. Justice Nelson, in May, 1848.

It appeared on the trial that, before and at the time of the drawing of the bill, one Benjamin F. Smith was the agent of the defendants at St. Louis, Missouri, to obtain consignments of produce to them and make advances for them upon the same. He was specially advised by them by letters under date of December 12th, 1845, and February 2d, 1846, that in case he could find any good safe lots of pork, lard or flour, for consignment, the drafts of the owner would be duly honored, on the property being put in safe condition for shipment, at $4 1-2 to $4 3-4 per barrel on flour, $5 1-2 per barrel on prime pork, $7 1-2 per barrel on mess pork, 5 cents per pound on lard, and 4 1-2 cents per pound on hams. Previously to the receipt of those letters Smith had acted as the

agent of the defendants, under a verbal authority from them to procure consignments and make advances, and, in order to obtain funds for such advances, he was authorized by them to draw or cause drafts to be drawn on them at New-York.

The bill in question was drawn by Huston under the authority and in pursuance of the direction of Smith, on a consignment of hams to the defendants. It was negotiated to the plaintiff on the same day on which it was drawn, (March 10th, 1846,) and he advanced in money the face of it less the interest. Before he consented to take the draft he made particular inquiries of Smith as to the authority of Huston to draw it, and was assured by Smith that Huston drew it by his, (Smith's) direction, against a consignment of property to the defendants, and that he, (Smith,) was fully authorized to make the arrangement. The letters of December 12th, 1845, and February 2d, 1846, were also shown to the plaintiff by Smith, before he purchased the draft, and, upon the faith of the letters and of Smith's assurances, he consented to advance the money. The defendants were immediately advised, both by Smith and by Huston, of the consignment, and of the draft drawn against it, the receipt of which advices they acknowledged in a letter to Smith dated March 20th. In that letter they complained that a draft at 90 days was too short, and requested that any further advances should be made on longer time, but did not intimate that there was any want of authority to draw, or that the paper would not be accepted. The draft was presented to the defendants on the 21st of March, acceptance of it was refused, and it was protested for non-acceptance. In a letter written by the defendants to Smith on that day they assigned as a reason for the non-acceptance that the advance of 4 cents per pound on hams was too much as the market then stood, but they afterwards wrote to Smith that the paper would have been accepted had it not come through a house in New-York which would sell their acceptances for the first offer, to the injury of their credit.

Warehouse receipts for the hams were given by Huston to Smith when the draft was drawn and the money advanced, and the property, which was at Quincy and at Bardstown, Illinois, was shipped to the defendants on the 27th of March and the 22d of April. It was received by them, and on the 12th of October they rendered an account of the sale of it, by which the nett balance amounted to $3,862 51.

On the trial, a member of the firm in New-York through which the draft was sent, testified that W. B. Taylor, Jr., whose name had been on the back of the bill, but was stricken out, was a clerk of his, and had put his name on the draft for security in its transmission, and had no interest in it; that the initials J. W. C. was a mark of his house, and indicated that the paper was received from the plaintiff. The bill was presented for payment on the 11th of June, 1846, but payment was refused, and it was duly protested for non-payment, at the request of C. J. Stedman, of New-York. Gano, whose name was on the bill, was cashier of a bank in Cincinnati. He endorsed the bill to Stedman, and his endorsement was stricken out after the receipt of October 13th, 1846, on the bill, was given. The original bill was received for collection from the plaintiff by his attorney, before the commencement of the suit, and was then in its present state as to endorsements and erasures. It was admitted that the plaintiff was indebted to the defendants in the sum of $410 35, with interest from the 1st of February, 1844. The court charged the jury that the plaintiff was entitled to recover the amount of the bill, after deducting the payment receipted on it and the set-off. The defendants excepted to the charge, and, a verdict having been found against them for $859 46, they now moved for a new trial, on a case.

George C. Goddard, for plaintiff.

Cornelius Van Santvoord, for defendants.

NELSON, Circuit Justice. I. The case of Dugan v. U. S., 3 Wheat. [16 U. S.] 172, is an authority in favor of the right of the plaintiff to sustain this suit in his own name, notwithstanding the endorsements upon the bill subsequent to that of Huston. The proof shows with reasonable certainty, that those endorsements were made for the purpose of transmitting and collecting the paper. They, therefore, might have been stricken out at the trial. But, if otherwise, and if they had been made for value, in the usual course of business, inasmuch as it appears that the plaintiff was the holder and owner of the paper at the time the suit was brought, it was properly brought in his name; and this, whether the endorsements were stricken out at the trial or not. On the plaintiff's becoming revested with the title to and interest in the bill, the endorsements, whether for value or transmission, became matters of form, and were properly disregarded.

II. The bill was presented for acceptance on the 21st of March, acceptance was refused, and it was duly protested. Afterwards, on the 11th of June, it was protested for non-payment. A qualified acceptance by the defendants appears on the bill under the latter date, to the amount of the proceeds of the hams against which it was drawn, and it is insisted that this is conclusive upon the plaintiff, as he must be presumed to have taken the conditional acceptance, and to have waived the benefit of the previous refusal.

There is no positive proof in explanation of the circumstances under which this conditional acceptance was written on the bill. The fact, however, that Stedman, who presented the bill for payment at that time,

caused it to be protested on the same day for non-payment, affords ground for the conclusion, that he did not assent to the qualified acceptance, but, on the contrary, regarded it as a refusal of payment, and as dishonoring the paper. The subsequent receipt from the defendants of the avails of the hams, when taken in connection with the previous facts and circumstances, must be deemed to have been an application of the proceeds, only as far as they would go towards payment, and not an acceptance of them in satisfaction. The receipt does not purport to be in full, and the protest which Stedman caused to be made, at the time of the conditional acceptance, is altogether irreconcilable with the idea, that he intended to assent to that acceptance and take the proceeds in satisfaction. The conclusiveness of the receipt of the proceeds depends upon the conclusiveness of the conditional acceptance. If the latter fails, the former must also.

III. The main question in the case is, whether or not the plaintiff can maintain the suit in his own name, under the counts charging the defendants with a promise to accept drafts drawn against consignment of western produce to him by the owner. The draft in question having been drawn by Huston in pursuance of authority communicated by the defendants to Smith their agent, there can be no doubt that Huston could have maintained the action in his own name. It is insisted, however, that the plaintiff cannot, on the ground of a want of privity between him and the defendants, and that the promise, if made at all, was made to the owner and shipper of the produce, and not to any third person who might choose to advance money upon the draft.

The cases of Coolidge v. Payson, 2 Wheat. [15 U. S.] 66, and of Boyce v. Edwards, 4 Pet. [29 U. S.] 111, are direct authorities to show, that the defendants in this case are not chargeable as acceptors of the bill. To make them liable in that capacity, the letters authorizing Huston to draw should have described the bill to be accepted, with reasonable certainty, so that its identity could not be mistaken by the party who should take it upon the faith of such authority. In Coolidge v. Payson the letters specified the particular bill to be drawn, and the endorsee, who had taken it on the faith of such authority, recovered against the defendants as acceptors. The court came to the conclusion, after a review of all the cases, that a letter written within a reasonable time before or after the date of a bill of exchange, describing it in terms not to be mistaken, and promising to accept it, was a virtual acceptance, binding on the person who made the promise, if the bill was taken on the credit of the letter by a person to whom it was shown. In Boyce v. Edwards the plaintiff failed to recover against the defendants as acceptors, the authority to draw having been general, as it was in the case before us.

The defendants were merchants in Charleston, who gave a general letter of credit to one Anderson of Georgia, to buy and ship cotton to them, and, on sending the bill of lading, to draw upon them for the price. The bills in question had been drawn in pursuance of this authority, and negotiated to the plaintiff, who took them on the faith of the letter of credit. In the court below the plaintiff was allowed to recover against the defendants as acceptors. The supreme court, after referring to the case of Coolidge v. Payson, and other cases affirming the same doctrine, held, that the judgment of the court below was erroneous, on the ground, principally, that the letter had no reference to the particular bills to be drawn, but was a general authority to draw at any time and to any amount, upon lots of cotton shipped, and that it did not describe any particular bills in terms not to be mistaken, which was indispensable in order to make the defendants liable as acceptors. The court further remarked, that the distinction between an action on a bill as an accepted bill, and one founded on a breach of a promise to accept, seemed not to have been adverted to, but that the evidence necessary to support the one or the other was materially different; that to maintain the former, the promise must be applied to the particular bill alleged in the declaration to have been accepted, while in the case of the latter, the evidence might be of a more general character, and the authority to draw be collected from circumstances and extended to all bills coming fairly within the scope of the promise. The court also observed, that, as respected the rights and remedies of the immediate parties to the promise to accept, and of all others who might take bills upon the credit of such promise, they were as secure and as attainable by an action on the breach of the promise to accept, as they could be by an action on the bill itself; and that the action might have been sustained, as the evidence stood, if the declaration had contained a count, properly framed, on a breach of the promise to accept.

The same doctrine was asserted and applied in the case of Russell v. Wiggin [Case No. 12,165]. There the defendants gave to one Breed a letter of credit, authorizing one Endicott to value on them at London, at six months sight, at any place in India, for account of Breed, for any sums not exceeding in all fifteen thousand pounds sterling, engaging that the bills should be duly honored when presented, if drawn within twelve months from the date of the letter. The plaintiffs, to whom the letter was exhibited, took the bills in question for value, relying on the commercial standing of the defendants, and on their promise in the letter. The declaration contained a count on a promise to accept. Judge Story, after an elaborate examination of the question, both on principle and authority, came to the conclu-

sion that the plaintiffs were entitled to recover. He referred to the case of Boyce v. Edwards, as affirming the same doctrine, and observed that in that case the court held, that if, because the bill to be drawn was not definitely described in the manner limited by the case of Coolidge v. Payson, the promise to accept would not operate as an acceptance in favor of the party receiving the bill, still it would operate as a promise to him to accept the bill when drawn, and thus be equally available. See, also, Adams v. Jones, 12 Pet. [37 U. S.] 207.

Upon the foregoing view of the authorities, therefore, this suit was properly instituted in the name of the plaintiff, and may be sustained on the promise to accept, as laid in the third and fourth counts of the declaration. New trial denied.