JOHN C. McCRAW, Trustee v. THE OLD NORTH STATE INSU-
RANCE COMPANY.

*Fire Insurance—Premium Notes—Stipulation of Forfeiture—Waiver
—Estoppel—Evidence—Contemporaneous Declarations.*

1. Where in an action to recover upon a policy of fire insurance, the tes—
timony of P (one of the parties insured)·was attacked by proof of dec-
larations made by him during the progress of the fire, whereupon P on
being recalled testified that he had made such declarations while exci—
ted and confused by the fire, without reflection, &c ; *Held,* that other
declarations of P as to the state of his mind, made to another witness
during the continuance of the fire, were contemporaneous with the first
and admissible in evidence.

2. In such case, evidence that shortly after the fire, the condition of P
was such as to excite the attention of one of his friends who in consid-
eration thereof advised P to take a drink of liquor, was relevant and
admissible.

3. Where, in such action, it appeared that the premium for the insurance
was not paid in cash but a note given therefor, and the policy contained
a stipulation that "no insurance shall be considered as binding until
the actual payment of the cash premium ; but where a note is given for
cash premium, it shall be considered a payment, provided the notes are
paid when due, and it is hereby stipulated and agreed by and between
the parties that in case of loss or damage by fire to the property herein
insured, and the note given for the cash premium or any part thereof
shall remain unpaid and past due at the time of such loss, this policy
shall be void ;" *It was held* (the said note having been past due and
unpaid at the time of the fire) that evidence that the defendant com-
pany by previous transactions with plaintiff and others had extended
similar notes, would warrant a jury in coming to the conclusion that
the defendant was estopped from denying an agreement for extension
and insisting upon a forfeiture.

4. If an insurance company intentionally by language or conduct leads its
policy holders to believe that they need not pay their premium notes
promptly and that no advantage will be taken of the failure, it is equiv-
alent to an express agreement to that effect and is a waiver of any for—
feiture expressed in the policy therefor.

(*Ferebee* v. *N. C. Home Ins. Co.*, 68 N. C. 11, cited, distinguished and ap-
proved.)

CIVIL ACTION, tried at Spring Term, 1877, of WARREN Superior Court, before *Buxton, J.* ·

This action was brought by plaintiff as trustee of Perkinson & Nicholson to recover the sum of $2000 the amount of a policy of insurance issued by the defendant company to Perkinson & Nicholson, on the 27th of October, 1874, (and continued in force by renewals) insuring their store house and stock of goods in Warren County. The amount of the premium ($30) was not paid in cash, but a note was given therefor payable on the 1st of February, 1876, to keep the policy in force from October 27, 1875, to October 27, 1876, and the defendant gave the ordinary renewal receipt. The property covered by the insurance was destroyed by fire on the 11th of April, 1876. No part of said note was ever paid, but the amount was tendered to the defendant after the fire, and refused. The policy contains the following provision ; " No insurance whether original or continued shall be considered as binding until the actual payment of the cash premium ; but when a note is given for cash premium, it shall be considered a payment, provided the notes are paid when due, and it is hereby expressly stipulated and agreed by and between the parties, that in case of loss or damage by fire to the property herein insured, and the note given for the cash premium, or any premium, or any part thereof shall remain unpaid and past due at the time of such loss or damage, this policy shall be void and of no effect."

Perkinson testified that B. F. Long, the general manager and secretary of the company, had agreed by parol with him to extend the time of payment of said note for ninety days after its maturity ; that in previous transactions with the company, the time for payment of similar notes had been extended ; and that when he first asked for this indulgence, he requested said Long to give him some written evidence of the extension, and that Long replied, he only made a minute to that effect in a book kept for that purpose.

Long testified that the time of payment of this particular note had not been extended, and admitted the custom and manner of extension as stated by Perkinson; that the conversation about extending the time on this note occurred in his office, and it was his universal habit, so far as he could remember, when extending the time of payment of a premium note, if he was in his office, to make a minute of the fact in his book of bills receivable; and that this book had no entry in it extending the time upon the note in question. He then testified as to the manner of conducting the business of the company in respect of extension of time upon such notes, &c.

Davis, a witness for the defendant, testified that at the fire "he asked Perkinson if the property was insured; and he replied, he did not know, he did not think it was, he was afraid he had let the time pass by, he had asked Nicholson to attend to it, and did not know whether he had done so or not;" and another witness testified "that he also, immediately after the fire, asked Perkinson about his insurance; and he replied, he could not tell, but he did not think he would have neglected so important a business, that Mr. Nicholson had gone to Warrenton to see about it."

Perkinson was then recalled and stated "that he was so excited and confused by the fire, he at the time had no recollection of the agreement to extend the payment of the premium note; that he had responded to the inquiries without reflection and at a time of great excitement and distress;" and to corroborate this explanation, the plaintiff introduced one Fitz and proposed to show by him, that while the property was burning he also asked Perkinson if it was insured, and that "he replied, he did not know, his mind was so confused and excited, he could not recollect." Upon objection this evidence was excluded by His Honor on the ground that the declaration was made, if made at all, at a different time from the declarations testified to by Davis and the other

witness. The witness however was allowed to say that Perkinson appeared to be much disturbed and depressed. The plaintiff also offered to show "that shortly after the fire had subsided, Perkinson's mental condition was such as to excite the attention and remark of one of his friends who had come to see him, and to call for the advice of this friend, that he was so much affected, it would be better for him to take a drink of liquor." This was objected to by defendant, and excluded.

The plaintiff asked the Court to charge "that a forfeiture by reason of the non-performance of a condition subsequent was not favored, and the waiver of the forfeiture by the company might be inferred from the dealing of the company with the insured, and from the known custom of the company with reference to matters insisted on as working the forfeiture, as well as it might result from express agreement." His Honor responded; "The forfeiture for non-payment of premium note at maturity is a provision in favor of the insurance company, which they may waive by an *express* agreement for an extension; and such agreement if made needs no consideration to support it." Verdict for defendant. Judgment. Appeal by plaintiff.

*Messrs. Moore & Gatling,* for plaintiff.

*Messrs. J. B. Batchelor, C. A. Cook* and *L. C. Edwards,* for defendant.

RODMAN, J. The plaintiff was not entitled to a judgment upon the verdict, because the jury found that the company had not extended the time for the payment of the premium note; and by the terms of the policy in such case, it was void. We think, however, he is entitled to a new trial for the reasons which we proceed to state:—

1. Perkinson, one of the owners of the property insured, had given evidence tending to prove that the company by

its agent had agreed to extend the time for the payment of the premium note, for ninety days after the 1st of February, 1876.  To weaken this evidence, the defendant put in evidence declarations of Perkinson made while the fire was in progress, tending to prove the contrary, and that the policy had become void by his neglect to pay the premium note when it had become due.  To explain these declarations, Perkinson was recalled and stated that during the fire he was excited and confused; that he had answered the questions put to him without reflection, and did not then remember that the time for paying the premium note had been extended.  To support this testimony of Perkinson, the plaintiff call in one Fitz, and proposed to show by him that while the fire was burning, he also asked Perkinson if the property was insured, and that Perkinson had replied that "he did not know, his mind was so confused and excited he could not recollect."  This testimony of Fitz was objected to and excluded by the Judge, and plaintiff excepted.  The Judge, however, allowed Fitz to say that Perkinson appeared much disturbed and depressed.

The ground of the objection was that this declaration to Fitz was not contemporaneous with those previously proved, and could not therefore qualify or explain them.  However that might be, if the declarations had been as to some other subject, we are of opinion that they ought to have been received.  Declarations as to the present state of the feelings or health are always competent when that is the question; and these were so nearly contemporaneous with those previously proved, and while the same state of circumstances continued, that they must reasonably be considered, in reference to the purpose for which they were introduced, as contemporaneous.

2. The plaintiff then offered to prove that shortly after the fire had subsided, Perkinson's mental condition was such as to excite the attention and remark of one of his

friends who in consideration of it, advised him to take a drink of liquor. This was objected to and excluded, and plaintiff excepted. We think this evidence was competent. It consisted of two parts,—one, as to the actual condition of Perkinson's mind, which was certainly competent; and the other, as to the advice of his friend, which was relevant' as tending to show to what extent the witness thought Perkinson's mind was affected. When evidence tends fairly to prove the matter in dispute, although it may be by itself weak, Courts are not disposed to reject it. The jury will pass on its collected weight.

3. The plaintiff requested the Judge to instruct the jury that a forfeiture by means of the non-performance of a condition subsequent, was not favored; and the waiver of the forfeiture by the company might be inferred from the dealing of the company with the insured, and from the known custom of the company with reference to matters insisted on as working the forfeiture, as well as it might result from express agreement. This the Judge declined to do, and instructed the jury that "the forfeiture for non-payment of the premium note at maturity, is a provision in favor of the insurance company which they may waive by an *express* agreement for an extension, and such agreement if made needs no consideration to support it."

Substantially, the only matter in dispute between the parties was as to the extension on the premium note for ninety days after it fell due. There was the evidence of Perkinson to the effect that there had been an express agreement for extension; and it might have been, and probably was argued, that there was in the testimony of Long, matter which supported Perkinson. Independently of this, it was argued for the plaintiff that the course of dealing by the company with Perkinson, and with other policy holders to his knowledge, as testified to by Long, estopped the company from denying an agreement for extension, and from insisting on a forfeiture. As there is to be a new trial, it will be suffi-

cient to say that there was evidence upon which the jury might, under proper instructions, have come to this conclusion. Long stated the course of dealing. He also stated that the company thought it good policy not to urge the prompt payment of the premium notes, as while they lost nothing by it, they were not during such indulgence bound for any loss. It is scarcely necessary to say that such a course of dealing with such a view which could not have been known to the insured, was unfair and calculated to deceive them. It was also a mistake in law; for it cannot be doubted that if a company intentionally by language or conduct leads its policy holders to believe that they need not pay their premium notes promptly, and that no advantage will be taken of the failure, it is equivalent to an express agreement to that effect, and is a waiver of the forfeiture. It will be sufficient in support of this doctrine to cite May on Insurance § § 360, 361, and the cases there referred to, which fully sustain it.

The Judge by his instruction in effect says that there can be no waiver except by an *express* agreement, and deprived the plaintiff of any benefit from the other view of the case. He also omitted to inform the jury that the company was bound by the acts and representations of its general agent within the line of his employment, a proposition of law which the plaintiff had urged and the defendant had denied. May on Insurance § § 143, 144: *Union Mut. Ins. Co.* v. *Wilkinson*, 13 Wall. 222.

This case differs essentially from *Ferebee* v. *N. C. Home Ins. Co.*, 68 N. C. 11, in which the agent agreed to receive payment of the premium in a debt owing by himself, which could not be supposed to be within the scope of his agency, and the company had notified the plaintiff that the premium must be paid, or the policy would be forfeited. Judgment reversed and *venire de novo*.

Error.

PER CURIAM.                                   *Venire de novo.*