Seaboard National Bank, Respondent, *v.* Henry G. Burleigh and Another, Appellants.

*Promise to accept a draft to be drawn — money advanced on the faith of the promise — a draft payable "after date" distinguished from one payable "after sight."*

When money is advanced on the faith of a promise to accept a draft to be drawn, to bear date the day of the advance, and to be payable a certain time from such date, and not after sight, it is immaterial when the draft is actually drawn; the moment such draft comes into existence the promise to accept attaches to it and becomes an acceptance, and the drawee becomes liable for the amount thereof to the person who advanced money on the faith of his promise to accept, although such person may have been ignorant at the time he made the advance of the period such draft had, under the promise to accept it, to

run, and may, at that time and before the draft for the prescribed length of time was drawn, have taken a draft drawn payable in a shorter time than that prescribed in the promise to accept.

An acceptance of a draft payable "after date," distinguished from one payable after sight.

APPEAL by the defendants, Henry G. Burleigh and Brackett W. Burleigh (co-partners under the name of H. G. Burleigh & Bro.), from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the city and county of New York on the 22d day of May, 1893, upon a verdict directed by the court after a trial at the New York Circuit, and also from an order denying the defendants' motion for a new trial made upon the minutes.

*John J. Adams*, for the appellants.

*A. Taylor*, for the respondent.

VAN BRUNT, P. J.:

It is apparent from a reading of the complaint in this action that the attorneys who drew the same did not know exactly upon what theory a recovery was to be had, whether upon a draft to be deemed accepted by the defendants under the statute, or for money paid out at their request. It is now claimed by the plaintiff that the action is for money paid out at defendants' request. It appeared upon the trial that the plaintiff was a National bank on the 1st of December, 1892, and that the firm of Morse & Crombie kept an account with it, and that a note of $1,875, previously given for value to the defendants by Morse & Crombie, and indorsed by them, and then held by the Garfield National Bank, fell due that day, which note was payable at the plaintiff's bank. The Garfield National Bank had presented the note for payment, and Morse & Crombie had not sufficient funds at the bank to pay it. Crombie, one of the firm, then called at the plaintiff's bank and presented the following letter from the defendants to the vice-president:

" Messrs. MORSE & CROMBIE, New York:

" GENTLEMEN — The last day of your note of $1,875 is December 1st. We have been thinking to-day that you will not have time to

get the other note back here in time. It was discounted at the Garfield bank, and of course will be presented at the Seaboard bank to-morrow, the 1st.

"Please pay this note and draw on us for $1,875 for one month, and we will accept the draft and pay it when due. You can show this to the cashier of the Seaboard bank, and this will be your authority for drawing the draft.

"Yours truly,

"(Signed)                                      H. G. BURLEIGH & BRO."

Crombie said to the vice-president: "You see this letter from Burleigh, of Burleigh & Brother, authorizing us to draw on them for payment of this draft. Burleigh & Brother are perfectly good. Will you initial this note to be paid to-day and allow us to draw." The cashier then looked at the rating of the defendants, and found them very highly rated, and after consultation with the president the vice-president said to Crombie: "Very well, you draw your draft; I will initial this note to be paid." The note was thereupon paid, and Crombie drew the draft and brought it back to the vice-president, who, noticing that it was drawn at thirty days, said: "We don't take any draft as long as that; I won't accept that." He then tried to recall the messenger of the Garfield bank, but he had gone. The note had been certified. Crombie then said to the vice-president: "Very well, we will make it three days, and I think Mr. Burleigh won't object." The vice-president replied: "I am perfectly willing to do that." Crombie drew the draft at three days' sight, which plaintiff accepted and sent forward for collection and payment. Upon this draft reaching the defendants they refused to accept it, and on the twelfth of December wrote a letter attempting to withdraw their offer to accept the draft at one month, as per their letter of November thirtieth. Subsequently a draft was drawn at thirty days, which was sent to the defendants and not accepted, and on the twenty-ninth of December another draft at one month, antedated to December 1, 1892, was sent to the defendants and not accepted, and thereupon this action was brought.

It is urged upon the part of the appellants that the complaint ought to have been dismissed upon the ground that while it alleges an agreement by defendants to accept a one month's draft, it also alleges that said draft was due one month from December first, and

was not presented to the defendants for acceptance until December twenty-ninth; that the authorization from the defendants was to draw on them for one month, and that that meant one month's sight, and not one month from date. In support of this proposition attention is called to the case of *Ulster Co. Bank* v. *McFarlan* (5 Hill, 432). In that case the defendant had sent to W. H. De Forest & Co. a letter in the following language:

"GENTLEMEN — I hereby authorize you to draw on me at ninety days from time to time for such amounts as you may require, provided that the whole amount running and unpaid shall not exceed three thousand dollars. The above letter of credit to be good and binding for one year from this date." And it was held that the only authority to draw was at ninety days' sight and not ninety days from date, upon the ground that the object of executing a draft at ninety days was to give the drawee ninety days to prepare for payment of the draft after he learned that it was in existence, which was entirely in harmony with the authorization to draw. It was a letter of credit, drafts on which were to be made from time to time at uncertain intervals, and unless this construction was placed upon it, as the court said, "The words 90 days in the letter are of no practical importance."

But the case at bar is entirely different. The defendants authorizing the draft upon them knew that the money was to be paid on the first of December, when Morse & Crombie's note fell due, and they promised Morse & Crombie that they would pay a draft in one month, plainly in one month from the time the money was paid upon Morse & Crombie' note. It was upon this draft that the money was expected to be raised to pay the note then falling due, and of which the defendants were to receive the benefit. It was undoubtedly understood by them that Morse & Crombie would draw their draft upon the first of December, and that it should have one month to run. But it was never intended that that draft should be payable one month from sight, and no such construction can be placed upon the letter written by them on this subject. If Morse & Crombie had drawn the draft for one month from date at the time their note was paid there can be no question but that they would have been acting within the letter of authorization, and that the defendants would have been bound as acceptors of such draft. But

it is said that the bank refused their offer in the first instance. The bank advanced the money upon the faith of an agreement of the defendants to accept a draft of Morse & Crombie. It is apparent that the officers of the plaintiff did not understand the length of time of the draft which was to be drawn, and they probably would not have agreed to accept such a draft had they noticed the fact in the letter. But they made the payment upon the faith of a promise of the defendants to accept a draft, and the fact that they were disappointed when they learned the length of time such draft was to run in nowise released the defendants from their obligation. The plaintiff parted with its money upon the promise of the defendants, and it certainly cannot be claimed that it must lose it because it was ignorant of the full import of the promise. It is entitled to the full benefit of the contract, even though if, at the time it advanced the money, it had known its full import it would have refused so to do. The most that defendants can claim is that they should have the benefit of the stipulations in the contract which were favorable to them.

We are of opinion, therefore, that it was the understanding of the defendants that the draft to be drawn pursuant to their authorization was to bear date on the 1st of December, 1892, and to be payable in one month from such date. And it was immaterial when such draft was drawn. The moment that it came into existence the promise to accept attached to it and became an acceptance, the plaintiff having advanced the money upon the faith of an acceptance by the defendants of a draft to be drawn, although it may have been ignorant at the time it made the advance of the length of time such draft had to run.

The judgment and order should be affirmed, with costs.

Follett and Parker, JJ., concurred.

Judgment and order affirmed, with costs.