BANK v. HAY.

(Filed December 11, 1906).

*Principal and Agent—Contracts by Agent—Liability of Principal—Estoppel—Negotiable Instruments—Authority to Draw—Acceptance—Correspondence.*

1. When one deals with an agent, it behooves him to ascertain correctly the scope and extent of his authority to contract for and in behalf of his alleged principal.

2. The principal is liable upon a contract duly made by his agent with a third person: (1) When the agent acts within the scope of his actual authority; (2) when the contract, although unauthorized, has been ratified; (3) when the agent acts within the scope of his apparent authority, unless the third person has notice that the agent is exceeding his authority.

3. The principal may also, in certain cases, be estopped to deny that a person is his agent and clothed with competent authority or that his agent has acted within the scope of the authority which the nature of the particular transaction makes it necessary for him to have.

4. The authority to draw, accept or endorse bills, notes and checks will not readily be implied as an incident to the express authority of an agent. It must ordinarily be conferred expressly, but it may be implied if the execution of the paper is a necessary incident to the business, that is, if the purpose of the agency cannot otherwise be accomplished.

5. A letter written within a reasonable time before or after the date of a bill of exchange, describing it in terms not to be mistaken, and promising to accept it, is, if shown to the person who afterwards

takes the bill on the credit of the letter, a virtual acceptance, binding the person who makes the promise.

6. Where the letters, upon which the plaintiff bank relied as authority to an agent to make the draft which it cashed, show that the alleged authority to draw was nothing more than private instructions by the principal to his agent as to how he should conduct this part of the business, and were not to be used as a basis of credit to the agent, the Court properly nonsuited the plaintiff.

ACTION by Bank of Morganton against T. T. Hay, heard by *Judge O. H. Allen* and a jury, at the June Term, 1906, of the Superior Court of BURKE.

The plaintiff brought this action to recover sixty dollars, the amount of a draft which was drawn on 16 March, 1905, by H. L. Hinson on the defendant, payable to its order five days after sight. The defendant refused to accept and pay the draft upon the ground that Hinson had no authority to draw it. The plaintiff alleged that he did have authority to draw the draft as agent of T. T. Hay & Bro., of Raleigh, N. C., of which firm the defendant is a member. To show that such authority existed, the plaintiff introduced in evidence three letters written by T. T. Hay & Bro. to Hinson, as follows:

RALEIGH, N. C., January 24, 1905.

H. L. HINSON, *Morganton, N. C.*

DEAR SIR:—I am just in receipt of your letter, and will say that we are not at all discouraged, for we know you are coming to the point with some good applications soon. I had entirely overlooked your check, and now beg to enclose same to you. I think it will be well for you to draw on us at stated times or write a few days in advance and remind us of it in order that you may not be embarrassed. I will send you supplies asked for in your letter by to-morrow's mail.                Yours very truly,

(Signed)        T. T. HAY & BRO.

RALEIGH, N. C., February 1, 1905.

MR. H. L. HINSON, *Morganton, N. C.*

DEAR SIR:—It appears to us that you have been in Morganton long enough to find out whether or not you can do any work there or not, and we therefore write to know what are, really, your prospects. It is no use, in my opinion, for an agent to stay in a town indefinitely unless there is something in sight, for you have been there about three weeks and we have not had the pleasure of seeing a single application. Write me fully by return mail on this point, and let me know what we may expect from Morganton, and if the chances appear to be against you we want you to try some other place, for we must count on results and not what prospects may be in sight.     Yours very truly,

T. T. HAY & BRO.,
*General Agents.*

RALEIGH, N. C., March 7, 1905.

MR. H. L. HINSON, *Morganton, N. C.*

DEAR SIR:—Your draft for $20 was received this morning and will be paid, but I would like very much for you to write what the prospects are in Morganton, for unless you do something pretty soon the advance account will be so large that you will be unable to make it up in the way of commissions. We do not mind spending money for the business if we get anything in return, but it does not appear to me a good proposition for you to spend several months in one place with no prospect of sufficient business to cover the outlay; therefore, I am writing you again this morning to let me hear from you in regard to this matter, and to move to another point unless you have some good business absolutely in sight.

Yours very truly,
(Signed)    T. T. HAY & BRO.,
*General Agents.*

BANK *v.* HAY.

The three letters were the only ones selected by the plaintiff from all the letters in the correspondence between Hay & Bro. and Hinson which were produced by the defendant upon notice from the plaintiff, and were the only letters seen by the plaintiff or its cashier prior to the drawing of the draft.

W. E. Walker, a witness for the plaintiff, testified: "I am cashier of the Bank of Morganton, and was on 16 March, 1905. I knew H. L. Hinson, who was an insurance agent representing the Phœnix Life Insurance Company. He was here about three months. On 16 March, 1905, I cashed a draft for him, which was drawn on T. T. Hay & Bro., of Raleigh, of which firm the defendant was a member. The draft was for sixty dollars. [The witness produced the draft in suit.] I cashed this draft on the faith of a letter written by T. T. Hay & Bro. to H. L. Hinson, which Mr. Hinson showed me. This letter was dated 24 January, 1905. On the faith of the statements contained in this letter I cashed this draft, and T. T. Hay & Bro. refused to pay same. Hinson while in Morganton showed me two other letters from T. T. Hay & Bro. [Letters of 1 February, 1905, and 7 March, 1905.] I saw these three letters from Messrs. T. T. Hay & Bro. to Mr. Hinson before I cashed his draft."

Here plaintiff proposed to show that at the time said draft was drawn by Hinson and cashed by the bank, that Hinson stated to witness that he needed the sixty dollars for his expenses as agent for the defendant.

Plaintiff also proposed to prove by the witness that prior to this time he had cashed several drafts drawn by said Hinson on T. T. Hay & Bro., and that said drafts had always been paid.

Plaintiff also proposed to prove that the said Hinson stated to witness at the time the sixty-dollar draft was cashed that he needed the money to pay his expenses to Asheville and while at that point as agent. Plaintiff also proposed to prove

that in general appearance and demeanor Hinson appeared to be a gentleman.

All this evidence was objected to, and excluded by the Court, and the plaintiff excepted.

Continuing, the witness testified: "I had a conversation with T. T. Hay, one of the members of T. T. Hay & Bro., some time in the month of October, 1905, about this matter. Mr. Hay told me in the conversation that Hinson had been his agent and had gotten the best of him. I cashed this draft on the faith of the defendant's letter to Hinson, dated 24 January, 1905, and because similar prior drafts had been paid."

At the close of the evidence defendant moved for judgment as of nonsuit under the statute. The motion was sustained, and judgment of nonsuit was entered. The plaintiff excepted and appealed.

*S. J. Ervin* for the plaintiff.
*Avery & Avery* for the defendant.

WALKER, J., after stating the case: There is a general rule that when one deals with an agent it behooves him to ascertain correctly the scope and extent of his authority to contract for and in behalf of his alleged principal, for under any other rule it is said every principal would be at the mercy of his agent however carefully he might limit his authority. The power of an agent is not unlimited unless in some way it either expressly or impliedly appears to be so, and the person who proposes to contract with him as agent for his principal should first inform himself where his authority stops or how far his commission goes, before he closes the bargain with him. *Biggs v. Ins. Co.,* 88 N. C., 141; *Ferguson v. Mfg. Co.,* 118 N. C., 946.

The principal is held to be liable upon a contract duly made by his agent with a third person: 1. When the agent

acts within the scope of his actual authority.   2. When the
contract, although unauthorized, has been ratified.   3. When
the agent acts within the scope of his apparent authority,
unless the third person has notice that the agent is exceeding
his authority, the term "apparent authority" including the
power to do whatever is usually done and necessary to be
done in order to carry into effect the principal power con-
ferred upon the agent and to transact the business or to exe-
cute the commission which has been entrusted to him; and
the principal cannot restrict his own liability for acts of his
agent which are within the scope of his apparent authority
by limitations thereon of which the person dealing with his
agent has not notice.   The principal may also, in certain
cases, be estopped to deny that a person is his agent and
clothed with competent authority, or that his agent has acted
within the scope of this authority which the nature of the
particular transaction makes it necessary for him to have.
Tiffany on Agency, 180, *et seq.; Biggs v. Ins. Co., supra.*

The authority to draw, accept or indorse bills, notes and
checks will not readily be implied as an incident to the express
authority of an agent.   It must ordinarily be conferred ex-
pressly, but it may be implied if the execution of the paper
is a necessary incident to the business.   It will not be deemed
a necessary incident, though, unless the purpose of the agency
cannot otherwise be accomplished.   When the power is ex-
pressly conferred, it must be strictly pursued; and unless the
apparent exceeds the actual authority of the agent, paper exe-
cuted by him will not bind his principal if the agent mate-
rially departs from the terms of his authority in regard to
the amount or the time of the paper or its character in other
respects.   Where the power exists, it is of course confined to
the business of the agency, and does not authorize the making
of paper for the benefit of the agent or the making of accom-
modation paper, and any contract so made will not be bind-

ing upon the principal, unless it may be he has in some way precluded himself from pleading the want or excess of authority or from otherwise repudiating the act of his agent. Tiffany on Agency, p. 215, sec. 48.

When applying the general principles in the law of agency to the case of an agent who draws a check or draft on his principal in order to ascertain what is the liability of the principal, which is the question herein presented, we may derive some aid from what this Court has said with special reference to the promise and corresponding legal duty of the principal to accept and honor the paper, in adopting the general rule as laid down by *Chief Justice Marshall,* for the Court, in *Coolidge v. Payson,* 2 Wheaton, 66, in regard to liability on commercial paper. When speaking of the distinction attempted to be drawn by some of the courts between a promise to accept made before and one made after the bill is drawn, the Court says: "The Court can perceive no substantial reason for this distinction. The prevailing inducement for considering a promise to accept, as an acceptance, is that credit is thereby given to the bill. Now this credit is given as entirely by a letter written before the date of the bill as by one written afterwards." The general rule is then declared in these words: "Upon a review of the cases which are reported, the Court is of opinion that a letter written within a reasonable time before or after the date of a bill of exchange, describing it in terms not to be mistaken, and promising to accept it, is, if shown to the person who afterwards takes the bill on the credit of the letter, a virtual acceptance, binding the person who makes the promise." *Nimocks v. Woody,* 97 N. C., 5. Decisions of courts of high authority are cited in that case to sustain the rule. It had been formerly decided otherwise in England by the Court of Exchequer in the leading case of *Bank of Ireland v. Archer,* 11 M. & W., 383, and also by some of the courts of this

country, and they held that a promise made in writing to
accept and pay a draft, yet to be drawn, for a specified
amount, and communicated to one who, upon the faith of the
promise, becomes the payee of it, when drawn for value, is
not an acceptance in law, so that an action upon the draft
can be maintained by the holder for value.  But the rule here,
as we have shown, has been settled the other way, and the
original English rule seems to have been the same way.
*Pillans v. Van Microp,* 3 Burr, 1663; *Pierson v. Dunlop,*
Cowp., 57 L.; *Mason v. Hunt,* Doug., 284, 287; Byles on
Bills (16 Ed.), 260; though it was somewhat modified later
by confining the liability of the drawee, who had given the
authority to draw, to the person who was intended to take the
bill on the credit of a promise to accept, *Miln v. Prest,* 4
Campb., 393; resulting finally in the doctrine as stated in
*Bank v. Archer, supra,* and *Johnson v. Collins,* 1 East, 98.
See also Eaton & Gilbert on Com. Paper, secs. 147 and 148.
In applying this principle, it has been said that, first, the
promise to accept and pay should be made within a reasonable
time before the bill is drawn, for otherwise the drawer will
be presumed to have declined to act on the authority granted
him to draw, and the drawee will not be construed to have in-
tended an indefinite liability; and second, the promise must
so describe the bill that there can be no doubt of its applica-
tion to it.  1 Daniel Neg. Instr. (5 Ed.), sec. 560.  Mr.
Daniel says, also, that high authorities go further, and de-
clare that the promise must put its finger, so to speak, upon
the specific bill; and that otherwise, if the promise be broken,
the promisor may be sued by the drawer for breach of the
promise to accept; but he cannot be sued by any one as
acceptor.  It is further said that while it should clearly appear
that the bill corresponds to the promise (and is therefore pro-
tected by the authority), it is not perceived that there should
be required any nicety of description or exact correspondence

between the two, either as to number, amount, date, or otherwise. "The burden of proof is upon the holder to establish that by comparing the face of the bill with the promise, or the bill in connection with the transaction in which it is drawn with the promise, that it comes fairly and reasonably within its terms. This done, there can be no reason why the promisor may not be sued as an acceptor, as well as for breach of promise to accept. In either case the correspondence of the bill with the promise must be proved, and a cause of action existing there does not seem to be any sufficient reason for determining that the character of the proof must shape its form, and also determine whether it shall be brought by the holder of the bill who has taken it on the faith of the promise, or by the drawer, whose just expectations have been disappointed. The doctrine that the drawer may sue for breach of promise to accept when the bill is not accurately described in the promise, but that such promise does not operate as an acceptance, has been well said to rest on a distinction without a difference." 1 Daniel Neg. Instr. (5 Ed.), sec. 561. This is, he says, the doctrine as formulated in the decisions of several of the States, New York among them, when citing and commenting upon *Coolidge v. Payson,* 2 Wheaton, 66; *ibid.,* secs. 560, 561, and 562, where the cases are collected and examined. *Bank v. McFarlan,* 5 Hill (N. Y.), 432, and 3 Denio, 553; *Bank v. Burleigh,* 74 Hun., 400; *Parker v. Greelee,* 2 Wend., 545; *Greelee v. Parker,* 5 Wend., 414; *Bank v. Ely,* 17 Wend., 508. This view, he further says, is admirably stated in *Nelson v. Bank,* 48 Ill., 39, in which is cited as an authority in point the case of *Bissell v. Lewis,* 4 Mich., 450. See also *Lonsdale v. Bank,* 18 Ohio, 126; *Russell v. Wiggin,* 2 Story, 213; *Cassel v. Dows,* 1 Blatchf., 335; *Storer v. Logan,* 9 Mass., 55; *Brinkman v. Hunter,* 73 Mo., 172.

Let us now consider the proposition involved in this case in the light of the foregoing principles. We do not think it

can make any material difference whether we test it by the law of agency or by that of negotiable instruments—the result must be the same in either case. Nor is it necessary to adopt as law in this State the view expressed by Mr. Daniel, in regard to *Coolidge v. Payson,* in so far as it may be at variance with the principle as stated in that case, or may seem to go beyond it. Even in that view we must reach the same conclusion.

The plaintiff's cashier testified that while he had seen the letters of 1 February, 1905, and 7 March, 1905, "he cashed the draft on the faith of the defendant's letter to Hinson, dated 24 January, 1905, and because similar prior drafts had been paid." He was not, therefore, misled to the prejudice of the bank by anything that is said in the two letters of February and March. They may, though, be still considered on the question of the authority of Hinson to draw the draft. There is one thing that appears prominently in those two letters, namely, the fact that Hay & Co. were not pleased with the prospect of their agency at Morganton and were complaining of the agent's failure to secure any business, while the expense account had grown until it had about reached the limit justified by any reasonable expectation of commissions to offset it or to cover the outlay. They also furnish the only evidence we have of the usual amount of the agent's drafts on his principal, to-wit, twenty dollars. After all this, Hinson, just one week from the date of the last letter, draws the draft in suit for three times the amount of his last draft, and for expenses, not already incurred, but those likely to arise thereafter in another place. The case shows that all of the letters in the correspondence were delivered to plaintiff in response to his notice to produce them, and he selected only the three which were put in evidence. The letter of 7 March, 1905, calls upon Hinson to give an account of his agency, but it does not appear that he did so,

nor is it shown that he ever was instructed to go to Asheville, or notified Hay & Bro. of his intention to do so or of his purpose to draw on them for $60. It is true the cashier testified that similar drafts had before been paid. When, to whom, and for what amount? If to this bank and for as much as sixty dollars, or anything approximating that amount, why were they not produced? They may have been similar in other respects, without being at all identical in amount. Let it be assumed, for the sake of argument, that the payment of prior drafts was evidence of the agent's authority to draw this one, which may be questioned (*Marriner v. Lumber Co.,* 113 N. C., 52), unless the facts established such a course of dealing between the parties theretofore as would lead a reasonably prudent man to believe that the agent possessed the requisite authority, or, in other words, as would give him the apparent authority, or estop the alleged principal from denying that he had full authority. *Hay v. Ben. Assn.* (at this term); *McCraw v. Ins. Co.,* 78 N. C., 149; Story on Agency, secs. 95 and 260. Hay & Bro. could not have known from the face of the drafts thus paid by them that they had been cashed by the plaintiff bank, as that fact would not be indicated on the draft. If they had been forwarded through the bank at Morganton to a bank at Raleigh, merely for collection, they would present the same appearance when received by Hay & Bro. as if they had been cashed by the plaintiff bank. The principal might be willing to give his agent authority to draw for his expenses, provided he forwarded the drafts for collection, when he would not risk such an authority with the agent if his drafts were to be cashed by a bank. In the latter case, the principal might be cut off from defenses against his agent which in the former he would have.

Without specifying the particular advantages the principal would have when the dealings are confined strictly between

himself and his agent without the intervention of a third party, we may say generally that the doctrine of apparent authority or of estoppel would not enter into such a business relation to the prejudice of the principal where no actual authority existed. The principal could also take advantage of the state of his account between himself and his agent, or of the agent's misconduct, and there are other conceivable defenses he might have against the agent which would not avail him as against an innocent third party.

We have referred to this view of the case for the purpose of remarking that the correspondence between Hay & Bro. and their agent, Hinson, seems to confer an authority, not to have drafts on them cashed at a bank, but to draw for his expenses and forward the drafts for collection. The letter of January 24 clearly shows this to have been what was meant. The only object in having him draw at stated intervals was to remind Hay & Bro. that the instalment for expenses was due, for in that letter they tell him to draw or to write a few days in advance so that they would be reminded to send the check. The letters show that the alleged authority to draw was nothing more than private instructions by Hay & Bro. to their agent as to how he should conduct this part of the business.

The power to bind the principal by the making or endorsing of negotiable paper is an important one, not lightly to be inferred. It should be conferred directly, unless by necessary implication the duties of the agent cannot be performed without the exercise of the power, or where, as otherwise expressed, the power is practically indispensable to accomplish the object of the agency, and the person dealing with the agent must, subject to the principles heretofore stated, see to it that his authority is adequate. Mechem on Agency (1889), secs. 389-393. We cannot read the correspondence to be found in this case without being convinced that there was

143—22

enough upon its face to put the plaintiff bank upon its guard and to cause an inquiry to be made into the agent's authority before cashing his draft. Further, we think that the instructions were intended to be private and confidential and not as the basis of credit to be extended to the agent nor as an authority to him to obtain cash from a bank upon drafts to be drawn by him, nor by fair and reasonable implication did they authorize Hinson to make the draft in question. By comparing the correspondence with the draft, the latter appears at least to be a little out of the ordinary and should have excited suspicion as to the agent's assumption of authority to draw.

It follows from all we have said that the plaintiff's right to recover can be maintained neither upon any well-settled principle in the law of agency nor yet upon any in the law of negotiable instruments, either before or since the adoption of our statute, Revisal, ch. 54.

There was certainly no harm done the plaintiff when the Court excluded the proposed evidence as to what the agent stated at the time he drew the draft and received the money thereon, namely, that he needed the money to pay his expenses at Asheville while there as agent. His Honor took the correct view of the case and properly directed a nonsuit upon the evidence.

No Error.