SAVANNAH MURPHY, ADMINISTRATRIX OF PETER J. MURPHY, DECEASED, v. LAFAYETTE MUTUAL LIFE INSURANCE COMPANY.

(Filed 18 November, 1914.)

1. Insurance, Life—Premium Notes—Conditions of Forfeiture—Subsequent Agreements—Waiver—Trials—Questions for Jury.

The delivery of a life insurance policy absolute and unconditional is a waiver of the stipulation for a previous or contemporaneous payment of the first premium; and where the insurer has received the insured's note for the payment of this premium upon condition that the policy shall be avoided unless the note is paid at maturity, the condition will be upheld unless the time for its payment has been postponed by valid agreement or the stipulation, made for the benefit of the company, has in some way been waived by it, or the company has so acted in reference to the matter as to induce the policy-holder, in the exercise of reasonable business prudence, to believe that prompt payment is not expected and that forfeiture on that account will not be insisted upon.

2. Same—Renewal Notes—Principal and Agent.

Where the insured has had the policy of life insurance sued on delivered to him by the company, and for the payment of the first premium has

given his note with provision that unless paid at maturity the policy should become null and void, and there was evidence tending to show that this note was indorsed to its agent, likewise indorsed by him and given to the local bank for collection, and by it transmitted to the bank of the home office for collection, and that the insured, before the maturity of the note, went to the company's home office to make arrangements for an extension of time of payment, was referred by it to the bank there, which accepted a part payment on the note and a renewal note extending the time of payment for the balance; that the company sent written notice to the insured's address, to pay the extension note given by him, advising him to get remittance there by its due date to keep his policy from lapsing; that the insured died after the date the first premium note was due, but before that of the renewal note, for which payment was offered at the home office of the company before maturity, and refused: *Held*, sufficient for the determination of the jury upon the question of whether there was a valid agreement to postpone the payment of the first note or a waiver of its conditions, by which the insured was given until the due date of the renewal note to make payment of the balance due on his first premium.

3. Insurance, Life — Premium Notes — Renewals — Conditions of Policy — Waiver—Specified Officers—Approval—Trials—Questions for Jury.

Where the insured has given his note for the payment of his first premium on his life insurance policy with provision that the policy should become null and void if the note is not then paid, and it is shown that the insured applied at the home office of the company for a renewal of the note, which was accorded by the company's bank, to which the insured was referred; that the insured subsequently received a notice from the home office, in its official envelope signed by its cashier, son of the secretary, that the premium (renewal) note was due on a certain date, and be sure to get remittance there by that date, to keep the policy from lapsing, it is *Held*, sufficient for the determination of the jury upon the question as to whether the notice was sent with the knowledge and approval of the officers designated in the policy, the president, vice president, and secretary, as having sole power in behalf of the company to extend the time for the payment of the premium, etc., so as to bind the company therewith.

APPEAL by defendant from *Rountree, J.*, at March Term, 1914, of CUMBERLAND.

Civil action. It was admitted at the trial that the policy declared on and presented by plaintiff had been duly executed by defendants and that Peter J. Murphy, the insured named in the policy, was dead, having died on 19 February, 1913.

Defendant contended that the policy was avoided for nonpayment of the first premium note and also because of fraudulent representations by the insured in his application as to his physical condition.

The jury rendered the following verdict:

1. Was the premium given for the policy paid in accordance with the terms of the policy and of the note? Answer: "Yes."

2. Did Peter J. Murphy in his application make fraudulent representations of his physical condition which were material, as alleged? Answer: "No."

Judgment on the verdict for plaintiff, and defendant excepted and appealed.

*Rose & Rose for plaintiff.*
*Q. K. Nimocks for defendant.*

HOKE, J. There is no specific exception to his Honor's charge to the jury, and the evidence being ample to show good faith and to sustain plaintiff's position on the second issue, the question recurs on the refusal of his Honor to nonsuit plaintiff by reason of the failure of the insured to pay the first premium note.

It is well established in this jurisdiction that, in the absence of fraud and in so far as the contract of insurance is concerned, the delivery of an insurance policy absolute and unconditional is a waiver of the stipulation for a previous or cotemporaneous payment of the first premium. *Pender v. Ins. Co.,* 163 N. C., 98; *Waters v. Annuity Co.,* 144 N. C., 663; *Rayburn v. Casualty Co.,* 141 N. C., 425; *Grier v. Ins. Co.,* 124 N. C., 315. And our decisions are to the effect, further, that where a note for such a premium contains provision that unless the same is paid at maturity the policy shall be avoided, the condition will be made effective by proper proof unless the time for payment has been postponed by valid agreement or the stipulation has been in some way waived on the part of the company. *Sexton v. Ins. Co.,* 160 N. C., 597; *Perry v. Ins. Co.,* 150 N. C., 145; *McGraw v. Ins. Co.,* 78 N. C., 149; Vance on Insurance, pp. 175 and 178.

It is also held by well considered cases on the subject here and elsewhere that this provision as to forfeiture, being inserted for the benefit of the company, may be waived by it, and such a waiver will be considered established and a forfeiture prevented whenever it is shown, as indicated, that there has been a valid agreement to postpone payment or that the company has so far recognized an agreement to that effect or otherwise acted in reference to the matter as to induce the policy-holder, in the exercise of reasonable business prudence, to believe that prompt payment is not expected and that the forfeiture on that account will not be insisted on. *Gwaltney v. Assurance Society,* 132 N. C., 925; *McCraw v. Ins. Co.,* 78 N. C., 149; *Ins. Co. v. Eggleston,* 96 U. S., 572; *Ins. Co. v. Custer,* 128 Ind., 25; *Homer v. Ins. Co.,* 67 N. Y., 478; Vance on Insurance, p. 222.

In the present case the note given for the first premium, and on its face maturing 20 October, 1912, contained the provision that unless same was paid at maturity the policy should become null and void. The

same was not paid by the insured in full as originally promised, and, applying the principles heretofore stated, the disposition of the present appeal will properly be made to depend on whether there was a valid agreement to postpone the time of payment or whether the stipulation as to payment has been waived by the company or there was evidence presented from which such agreement or waiver could be properly inferred. On this question there was testimony on the part of plaintiff tending to show that "The application was written by Mr. John McDuffie, an agent and director of the company, 23 July, 1912 (record, p. 13 *et seq.*), and premium note for $52.64 taken for the amount of the premium, payable 20 October, 1912. (Record, p. 20, exhibit 2.) The note was indorsed by the LaFayette Mutual Life Insurance Company to its agent, John McDuffie, and likewise indorsed by him, and by him deposited with the First National Bank of Oxford for collection. That bank transmitted same to the Fourth National Bank of Fayetteville for collection. (Record, p. 21, and evidence of E. E. Page, secretary, p. 42.) The sum of $25 and interest in advance was paid upon note to Mr. Peace, cashier of the Fourth National, and funds sent back to Oxford bank. The intestate, with his brother, went to home office of defendant, and was referred by those in charge of the office to the bank, as they did not have the note. Renewal interest was taken, which carried note to 1 March, 1913. The insured died 19 February, 1913, and balance due on premium note was tendered to secretary in the home office on 28 February, 1913, the day before the note fell due, which the secretary refused to accept. On 15 February, 1913, defendant company sent to the insured a written notice that the premium note for $27.64 would be due 1 March, 1913, saying: 'Be sure to get your remittance here by the above date to keep your policy from lapsing.' . (Record, p. 29.) This notice was sent out by the home office of the company, in their official stamped envelope, on the company's form of notice, and was signed by A. P. Page, son of the secretary, who was cashier."

From these, the facts chiefly relevant to the issue, we think it not only the permissible but eminently the correct inference, as made by the jury, that there was an agreement to postpone or a waiver of the conditions, and the insured was thereby given the privilege of not paying the premium note until 1 March, thus keeping the policy in force until that date.

We are not inadvertent to the provision of the policy referred to by counsel to the effect that "Only the president, vice president, or secretary has power in behalf of the company to make or modify this or any contract of insurance to extend the time for paying any premium, and the company shall not be bound by any promise or representation heretofore or hereafter given by any person other than the above"; but when it is

167—22

shown, and on a motion to nonsuit we must accept it as proven when there is evidence tending to show it, that the note was first extended ninety days on prepayment of the interest for that period and $25 on the principal to the bank acting as the company's agent, and that the insured afterwards went to the home office of the company for the purpose of obtaining another renewal and subsequently he received a notice from such home office, in an official stamped envelope of the company, signed by A. B. Page, cashier, and son of the secretary, to the effect that his premium note for $27.64 was due 1 March, "Be sure to get your remittance here by the above date to keep your policy from lapsing," we think it follows, by fair and reasonable inference, that this notice was sent with the knowledge and approval of the officers designated on the face of the policy and that their action in the premises is binding on the company. Vance on Insurance, pp. 351-53.

On the record, we are of opinion that the cause has been correctly tried and determined and that the judgment in plaintiff's favor should be affirmed.

No error.