## Eastern Railroad Company *vs.* Relief Fire Insurance Company.

A railroad corporation was insured, in a foreign stock insurance company, against its liability for loss by fires occasioned by sparks from its locomotives to property of others on lands not occupied by it, by a policy containing a printed condition that persons sustaining loss by fire "shall forthwith give notice thereof in writing to the company, and within sixty days from the occurring of said fire shall deliver as particular an account of their loss as the nature of the case will admit." The insurers had a general agent in this Commonwealth, appointed under the Gen. Sts. c. 58, §§ 66–78, who issued policies for them, had policies of the company signed in blank, containing a clause that they were not valid until countersigned by him, and made insurances himself and filled out and countersigned the policies, as he did with the policy in question. After several such fires had occurred, for which the railroad corporation was liable, but of which they had given no notice to the insurers, the treasurer of the corporation informed this agent that they were having numerous fires along the line, and that they were examining carefully the claims made on them therefor. The agent said this was satisfactory, and, when they had got through paying, to hand in a schedule of what had been paid, and it should be attended to. *Held,* that the agent had authority to waive, and waived, the preliminary proof of loss required in the condition; and that letters to him from the insurers, not communicated to the railroad corporation, were inadmissible to show a limitation of the authority.

CONTRACT on a policy of insurance dated March 2, 1865, by which the defendants, who were a stock insurance company doing business in New York, insured the plaintiffs for one year against loss or damage by fire to the amount of $10,000 " on their liability for loss and damage by fire occasioned by sparks from locomotives to property of others situate on lands not owned or occupied by the plaintiffs. The policy purported on its face to be made and accepted in reference to certain printed conditions annexed to it, and which were declared to be part of the contract. The 9th of these conditions was as follows :

" Persons sustaining loss or damage by fire shall forthwith give notice thereof in writing to the company, and within sixty days from the occurring of said fire they shall deliver as particular an account of their loss and damage as the nature of the case will admit, signed with their own hands. And they shall accompany the same with their oath or affirmation, declaring the said account to be true and just ; showing also the ownership of the property insured ; what other insurances, if any, existed on the same prop-

erty, and giving a copy of the written portion of the policy of each company; what was the whole sound or cash value of the subject insured; in what manner the building insured, or containing the subject insured, and the several parts thereof were occupied at the time of the loss; who were the occupants of such building, and when and how the fire originated, so far as they know or believe. They shall also produce a certificate under the hand and seal of a magistrate, or notary public, most contiguous to the place of the fire, and not concerned in the loss, stating that he has examined the circumstances attending the fire, loss or damage alleged; that he is acquainted with the character and circumstances of the claimant; and that he verily believes that such claimant has, by misfortune, and without fraud or evil practice, sustained loss and damage to the subject insured, to the amount which such magistrate or notary shall certify.

" When merchandise or other personal property is partially damaged, the assured shall forthwith cause it to be put in as good order as the nature of the case will admit, assorting and arranging the various articles according to their kinds, separating the damaged from the undamaged; and shall cause an inventory to be made and furnished to the company, of the whole, naming the quantity and cost of each, and the amount of sound or cash value. The damage shall then be ascertained by the examination and appraisal of each article by disinterested appraisers, mutually agreed upon.

" Whenever required in writing, the insured, or person claiming, shall exhibit his books of account, and other vouchers, to the insurers or their agent, at the office of this company, and permit copies thereof to be made; and shall also exhibit to any persons named by the company, and shall permit to be examined by them, any property damaged on which loss is claimed, or any property saved which was insured by this policy; and until such proofs, declarations and certificates are produced, and such appraisals and examinations of property and accounts permitted by the claimant, the loss shall not be payable.

" In case of claim for loss or damage on a policy assigned, where there is no actual sale or transfer of the property insured,

proofs of loss shall be made by the assured in conformity with the conditions of this policy, in like manner as if no assignment had been made; otherwise this policy shall be void.

" The sound or cash value of the property destroyed or damaged by fire shall be deemed to be such as it may cost at the time of the fire to replace the same."

After the decision reported 98 Mass. 420, the case was referred to an auditor, who found that between August 16, 1865, and November 14, 1865, more than $10,000 worth of property covered by the policy was consumed by fire; that " no notice forthwith of the several losses was ever given in writing to the defendants, as they occurred or came to the knowledge of the plaintiffs, and no statement of loss signed and sworn to, as provided in the 9th condition of insurance, was given to the defendants until June 14, 1866; " but that on that day an accurate statement of the losses of the plaintiffs on the property covered by the policy, the amount due on each and the time each occurred, with a certificate sworn to by the plaintiffs' treasurer that the statement was " a copy of claims filed and paid in the office of " the plaintiffs, was given by the plaintiffs to Abraham K. Hills; " that the defendants duly appointed Hills their general agent in Massachusetts under the Gen. Sts. *c.* 58, §§ 68–78; that he continued to act as such until March 28, 1866, when Horace O. Whittemore was appointed general agent, and continued so to act through 1866; that Hills & Whittemore were partners in business with one Gage, calling themselves general insurance agents under the style of Hills, Whittemore & Company, and acted for the defendants as such from July 1864 to 1867; that no distinction was made between the acts of Hills or Whittemore and the acts of Hills, Whittemore & Company; that this firm solicited insurance and issued policies for the defendants; that they so advertised and held themselves out during the years 1865 and 1866; that they had the policies of the defendants signed by the officers of the company in blank, containing the clause that the policy was not valid until countersigned by A. K. Hills, agent, as did the policy in suit; that they made the insurance themselves and filled out the policies of the defendants; that the policy in suit was so

signed in blank, the insurance made, and the terms, risk, &c., written in by them at their office in Boston, and the policy issued by them to the plaintiffs March 2, 1865, they receiving the premium; and that they were often in the habit of adjusting and settling, themselves, and drawing on the company for the same, though as a general rule they first forwarded the statement of loss to the company." ·

" The defendants offered sundry letters written by the company to Hills and to Hills, Whittemore & Company, as their agent or agents, at various dates between January 4, 1864, and March 13, 1866, for the purpose of showing the extent of the authority of Hills and the firm as agents of the defendants; but the auditor was of opinion that they were not competent for that purpose, being private instructions not communicated to the plaintiffs, and excluded them.

" Upon these facts, the auditor found that Hills, and the firm of which he was a member, were the duly appointed agents of the defendants, and as such agents made insurance, received the premiums, issued policies, adjusted losses, and thereby held themselves out, with the knowledge of the company, as having authority generally to transact the business of the company."

The auditor also found " that on or about October 15, 1865, the treasurer of the plaintiffs, with their superintendent, visited · Hills at his office, and informed him that they had had, and were then having, numerous fires along the whole line of their road, calling his attention particularly to the September and October fires; that claims were made on them from all quarters; that they had sent their road-master, accompanied by an impartial and disinterested person, experienced in such matters, one Rowell, to examine into each individual case, to report thereon if caused by the sparks of their locomotives, and to determine and assess the damage done to the property of each individual making a claim; that they had done this, and were still at the work, and wished to know if that course was satisfactory to them; that Hills replied that it was, to continue as they were doing and the defendants would do what was right, and, when they got through paying, to hand in a schedule of what had been paid and it should

be attended to; that several interviews were afterwards had in the autumn and winter, and some as late as March or April 1866, and the same assurances were made by Hills; that Rowell, on behalf of the plaintiffs, in December or January 1866 visited Hills, and asked him if he wished any information or desired that he should go to New York to see the defendants, in regard to the losses and assessment of damages on the road, and Hills replied that he did not, that the policy would be adjusted satisfactorily; that the plaintiffs, relying on this, gave no notices or statements in writing, but continued to make adjustments; that, after the adjustments were made the sums awarded were put upon their next monthly pay-rolls; and that nearly all the sums, awarded and stated in the statement of loss, were paid on the pay-rolls of the plaintiffs; but that a number of sums awarded and stated in said statement were not in fact paid to the parties on June 14, 1866, when the statement was given to Hills, but were paid by the plaintiffs after that date.".

The auditor also found that on November 21, 1865, the plaintiffs' superintendent wrote to Hills, informing him that suits had been begun against them for damages from fires claimed to have been caused by sparks from their locomotive engines, and asking the defendants to attend to their defence; that on December 2, 1865, Hills, Whittemore & Company sent the following reply signed by them: "We have received at our office various papers relative to losses by fire claimed to have been caused by sparks from your locomotives, and we can only say that while the Relief Insurance Company will throw no obstacles in the way of a speedy and satisfactory adjustment of all reasonable and legitimate claims, still it cannot attend to any suits which may have been or may be brought against the railroad corporation on account of such damages as are represented. The proper course seems to be for your company to proceed as though they had no insurance whatever, and if any liability is proven beyond a reasonable doubt, then claims based upon such proofs must be presented to the insurance company, and they will be considered. Of course no suits must be allowed to go by default, and you wil' please understand from this communication, that it is not intended

in any way or manner to bind the Relief Insurance Company to any particular course of action. When such proofs are presented as have satisfied the persons who may have been employed to investigate the claims, and also the course of your company consequent thereon, we will forward them at once to the company in New York, and will aid you all in our power in effecting a satisfactory and prompt adjustment; " but that this letter, which was written by Whittemore, referred exclusively to the losses on which suits had been brought, (which suits were successfully defended by these plaintiffs,) Whittemore having no knowledge of other losses at that time.

The auditor further found " that, from the nature of the losses, their number and character, the difficulty in ascertaining them, the delay in receiving notice, and the great delay necessarily attending their examination and adjustment, it was practically impossible to make a full and accurate statement of every loss within sixty days from the date of its occurrence; that the arrangement made was under the circumstances a proper and reasonable one (assuming the defendants to be satisfied with the accuracy of the adjustments and the method of making them, of which no question was made); that the statement of loss was made under the circumstances within a reasonable time; that at the time the statement was given to Hills he made no objection either to the time of making or the form of it, but stated he would forward it to the company; and that the plaintiffs received no notice at any time from the defendants or their agents that there was any objection to the statement for any reason; but that on a subsequent demand the defendants refused to pay."

The auditor therefore found " that there was a waiver of the sixty days' provision in the 9th condition of insurance, by the defendants' agents; that the defendants were bound thereby; and that the defendants owed the plaintiffs the sum of $10,000, which was due and payable to them August 14, 1866, sixty days from the time the statement was delivered to Hills, together with interest thereon from that date."

The auditor, in a supplemental report, found, as additional facts, that " the dates when the fires actually occurred w~

stated with substantial accuracy, but that there was no evidence presented to the auditor of the precise time when these several losses or fires came to the knowledge of the plaintiffs; that the plaintiffs generally learned that fires had taken place within a few days of their occurrence; that their agent at once proceeded to ascertain in regard to them, as stated in the report; that generally an appraisal of the loss of each person was made within ten or twenty days, except in some cases where further delay was necessary to ascertain the facts; that in regard to these losses it was impossible for the plaintiffs to give notice of each loss immediately on receiving information of a fire, on account of the delay attending the examination and adjustment of each individual claim; that notice was given within a reasonable time; that the defendants' agents waived notice in writing; and that the defendants were bound thereby for reasons and upon facts more fully stated in the report."

The case was reserved, by *Ames*, J., for the consideration of the full court, upon the reports of the auditor; "if, as matter of law, he was authorized to find as he did, upon the facts by him reported, and if the evidence rejected by him was rightfully rejected, then judgment to be entered for the plaintiffs for $10,000 and interest, on his report; otherwise the case to stand for trial."

*S. B. Ives, Jr.*, for the plaintiffs.

*J. G. Abbott*, for the defendants. The defendants' agents had authority to make a certain kind of contracts for the defendants, and to receive the consideration therefor, but this had no tendency to show that they had authority to dispense with the performance of such contracts by those with whom they were made. *Vose* v. *Eagle Insurance Co.* 6 Cush. 42. *Wilson* v. *Genesee Insurance Co.* 4 Kernan, 418. *Chase* v. *Hamilton Insurance Co.* 22 Barb. 527. *Leadbetter* v. *Ætna Insurance Co.* 13 Maine, 265. *Stimpson* v. *Monmouth Insurance Co.* 47 Maine, 379. *West Branch Insurance Co.* v. *Helfenstein*, 40 Penn. State, 289. *Lee* v. *Howard Insurance Co.* 3 Gray, 583. *Mulrey* v. *Shawmut Insurance Co.* 4 Allen, 116. *Murphy* v. *People's Equitable Insurance Co.* 7 Allen, 539. *Evans* v. *Trimountain Insurance Co.* 9 Allen, 329. *Kimball* v. *Howard Insurance Co.* 8 Gray, 33. *Shawmut*

*Sugar Refining Co.* v. *People's Insurance Co.* 12 Gray, 535. *Smith* v. *Haverhill Insurance Co.* 1 Allen, 297. *Harrison* v. *City Insurance Co.* 9 Allen, 231. *Bell* v. *Auldjo*, 4 Doug. 48. The St. of 1861, *c.* 170, has no bearing upon the question. *Harrison* v. *City Insurance Co.* 9 Allen, 231. It is not pretended there was any waiver before October 15, 1865; but at this time the plaintiffs had given no notice at all of losses which had previously occurred, they had failed to comply with their contract, and a mere oral waiver without consideration would be insufficient, and would be, in fact, making a new contract. *Cockerill* v. *Cincinnati Insurance Co.* 16 Ohio, 148. *Phœnix Insurance Company* v. *Lawrence*, 4 Metcalfe, 9. *Crowningshield* v. *New York Insurance Co.* 3 Johns. Cas. 142.

AMES, J. The policy under which the plaintiffs claim does not apply to any particular building or to any specific or definite description of property. It was a contract of indemnity against loss or damage by fire occasioned by sparks from locomotives to property of others on lands not owned or occupied by the assured Under the provisions of the Gen. Sts. *c.* 63, § 101, railroad cor porations were made liable for all such losses, and were declared to have an insurable interest in all property exposed to injury of that kind from its proximity to their respective routes. The policy is therefore substantially a contract of reinsurance against such losses as the assured may be required to pay by virtue of the statute. *Eastern Railroad Co.* v. *Relief Insurance Co.* 98 Mass. 420.

It appears from the auditor's report that fires along the line of the road were frequent, the damage in some cases being small in amount, and these fires might and probably did occur in places remote from each other. In each case, it was necessary for the plaintiffs to first ascertain whether they were themselves responsible under the statute, before they could make any claim under the policy. Each case therefore would require a full investigation into the cause and origin of the fire, before the assured could be in condition to give the preliminary notifications and proofs required by the policy; and in such a state of things, and under the special circumstances of this policy, the time allowed and the

mode prescribed for furnishing such notice and proof might be found to be inconvenient and inappropriate. If they so considered them, and saw fit to propose any modification of the policy in that respect, the general agent of the defendants, and their only representative, in this state, was the proper person to receive the proposition. The case finds that, so far as he had power to do it, he waived the requirements of the policy as to the time and manner of giving notice and furnishing evidence of the loss, and assented to another mode of proceeding, which the plaintiffs considered and urged as more convenient in this special case.

It appears that the defendants, being a foreign corporation, in order to entitle themselves to transact business as an insurance company in this state, had appointed him their agent to represent and act for them, according to the regulations of the Gen. Sts. *c.* 58, §§ 66–78. He was their agent not only for the purpose of being served with process in order to bring the company under our jurisdiction, but also for the purpose of doing their general business in this state. He was employed not merely to receive and transmit applications for them to accept or reject, but apparently to take risks, to settle the rates of premium, and to issue policies at his discretion, on their account. For this purpose blank policies, signed by the proper officers of the company, were intrusted to him to countersign and issue. So long as he remained their agent, he seems to have superintended and carried on one entire local branch or department of their business. He was the only man with whom the plaintiffs dealt or were expected to deal; and if there were any special instructions intended to limit the apparent extent of his authority, there is nothing in the case to show that they were made known to the plaintiffs. So far as the Massachusetts business of the company was concerned, he, while his agency lasted, stood in the place of a representative or officer of the company, and the only one to whom the plaintiffs had access, or with whom they had any communication.

It is true, that, in his character of representative and agent of the company, it would not be in his power to dispense with or modify the essential character or substance of the contract. It is well settled, however, even in the case of a mutual insurance com

pany, in which greater strictness is required, that the officers of the company may in any particular case waive or modify the stipulations of the policy as to the preliminary proofs of loss, or the form and mode in which the liability of the company shall be ascertained and made known. *Underhill* v. *Agawam Insurance Co.* 6 Cush. 440. *Brewer* v. *Chelsea Insurance Co.* 14 Gray, 203. *Priest* v. *Citizens' Insurance Co.* 3 Allen, 602. *Blake* v. *Exchange Insurance Co.* 12 Gray, 265. In the case at bar, all that the agent was requested to do was to waive the prescribed form and mode in which the liability of the company was to be ascertained and reported, for the purpose of substituting another mode of proceeding, about which he was consulted, and which he agreed to be reasonable under the circumstances of this special case. This agreement certainly made no change in the substance of the contract, and extended only to the preliminary proofs of the loss, and the form and mode of ascertaining and giving notice of its extent. It appears to us, on taking into consideration his relation to the company, the mode in which their business was done in this state, and the extent of his apparent powers as their sole agent and representative, that the modification in the directions of the policy as to notice and proof of loss, to which he assented, was binding upon the defendants ; that he may fairly be considered for this purpose as an officer of the company ; that the plaintiffs were justified in acting and relying upon the agreement, and that it cannot now be repudiated without a breach of faith which the law cannot allow.

*Judgment for the plaintiffs according to the auditor's report.*