## FEBRUARY TERM, 1887.

R. M. NIMOCKS v. JOHN D. WOODY et als.

*Jurisdiction—Contract and Tort—Bills of Exchange—Acceptance—Equitable Assignment.*

1. Where a commission merchant wrote to his customer that a certain amount was due him and that he might draw for it, which letter the customer showed to the plaintiff who took the drafts on its credit, but the commission merchants afterwards refused to accept it, when the plaintiff sued both the drawer and the commission merchants; *It was held*, that the liability of both was *ex contractu*, and if the amount was under two hundred dollars a justice had jurisdiction.

2. Where such letter was written on March 29th, and draft was drawn on April 4th, it is not such delay as will discharge the drawees, it not appearing that any harm had come to them by the delay.

3. A letter written to the drawer within a reasonable time before or after the date of a bill of exchange, describing it in terms not to be mistaken, and promising to accept it, is, if shown to the person who takes the bill on the credit of the letter, a virtual acceptance, and binds the person who makes the promise, even although there be no funds in his hands belonging to the drawer, if the bill be drawn payable at a fixed time, and not at or after sight.

1

4. If in such case, the bill be drawn payable at or after sight, and is for the entire amount named in the letter, the payee can maintain an action against the drawee as the equitable assignee of the fund; as *it seems* in such case the drawee would not be liable as acceptor, unless the draft was drawn in precise accordance with the terms of the letter.

CIVIL ACTION, tried on appeal from a justice of the peace, before *Gilmer, Judge,* and a jury, at Fall Term, 1886, of CUMBERLAND Superior Court.

This action, tried before a justice of the peace of Cumberland county, and carried into the Superior Court by the defendants' appeal, is for the recovery of one hundred dollars, the unpaid residue of a draft drawn by the defendant Byrd upon the other defendants. The essential facts of the case, which seem not to have been disputed, are these:

The defendants Woody & Currie, on March 29th, 1885, at Wilmington, addressed to their co-defendants the following letter:

C. M. BYRD, Esq., *Bunn's Level, N. C.:*

DEAR SIR: Enclosed find account sales raft timber. We got all we could for your timber, and concluded it was not worth while to hold any longer. If you have not drawn a $50 draft, you can draw for the net proceeds, $223.03, at sight. If you have drawn $50, draw on us for $173.03. Timber still dull and low, $2.00 to $10.00.

Yours, &c.,      WOODY & CURRIE.

In pursuance of this authority, was drawn a draft, as follows:

$172.53.          FAYETTEVILLE, N. C., April 4th, 1885.

At sight, pay to the order of R. M. Nimocks, one hundred seventy-two and 53-100 dollars, balance on timber sales, value received, and charge the same to account of

C. M. BYRD.

To Messrs. Woody & Currie, Wilmington, N. C.

The letter was shown to the plaintiff a day or two before the date of the draft, and then a draft was drawn by and on the parties for $50.50, and the other on the day of its date, soon after, for the residue of the sum mentioned in the letter, and received by the plaintiff upon the faith of what is therein stated.

The plaintiff endorsed the draft to the Fayetteville National Bank, by whom it was presented, and went to protest for non-acceptance, and thereupon the plaintiff took it up and brought suit on May 25th, 1885.

After its dishonor, the drawee paid to the plaintiff $72.03, and refused to pay more, saying that a mistake of $100.00 had been made in Byrd's account when the letter was written, which had since been discovered.

No defence was made by Byrd, and no evidence offered by the resisting defendants.

These moved to dismiss the action for want of jurisdiction in the justice who tried the cause:

I. Because it was an action not founded on contract.

II. Because two separate causes of action, one against the defendant Byrd, *ex contractu,* and one against Woody & Currie, *ex delicto,* had been joined in the same suit. His Honor being of opinion that there was no improper joinder, and that the justice had jurisdiction, refused defendants' motion, and they excepted. The defendants Woody & Currie asked for the following special instructions, which were refused:

I. That the defendants Woody & Currie not being parties to the draft, were not liable thereon.

II. That the letter, not being intended as a letter of credit, but a simple letter from a commission merchant to his customer as to the state of his account with them, that the plaintiff had no right to treat it as a contract, or basis for a contract, with him.

III. That the plaintiff, being a stranger to said letter, could take no advantage of any promise therein to Byrd, expressed or implied.

IV. That the time between the date of the letter and the date of draft, was too long for the plaintiff to have treated it as a promise or contract expressed or implied.

V. That upon the whole testimony, taking the same as true, the plaintiff was not entitled to recover.

His Honor charged the jury, that if they believed the evidence, they should find a verdict in favor of the plaintiff, and the defendants Woody & Currie excepted. Verdict and judgment for the plaintiff against the defendants Woody & Currie, and they appealed.

No counsel for the plaintiff.
*Mr. E. R. Stamps*, for the defendants.

SMITH, C. J., (after stating the facts):

I. The jurisdiction was in the justice, for the action is founded upon contract, and is not in tort as misconceived by the appellants.

II. The objection that the appellants are not parties to the draft, nor the plaintiff to the letter, and that its admission as evidence was an erroneous ruling, is in all these aspects untenable, as will be seen in the inquiry into the defendants' liability to the plaintiff.

III. The interval between the date of the letter and the date of the draft, it not appearing that any harm has occurred to the drawees by the delay, is not unreasonable under the circumstances, so as to work their exoneration.

The main question then is, whether the appellants incurred responsibility to the plaintiff, who accepted the draft of Byrd upon the assurance contained in the letter shown him, and on which he relied, of prompt payment on its presenta-

tion, there being money then in their hands upon their own representation, sufficient for the purpose.

It must be admitted that there is some diversity in the rulings in England and in this country, as to whether a promise made in writing to accept and pay a draft for a specified amount, yet to be drawn, and communicated to one, who upon the faith of such promise, becomes the payee of it, when drawn for value, is an acceptance in law, so that an action upon it can be maintained by the latter. In the case of *The Bank of Ireland* v. *Archer*, 11 M. & W. (Ex.), 383, it is decided that such a result does not follow, and there are decisions in some of the State Courts to the same effect. But in the well considered and elaborate opinion of Chief Justice MARSHALL, in *Cooledge* v. *Payson*, 2 Wheat., 63–75, speaking in reference to the distinction between the cases of a bill drawn upon, and a bill drawn after such promise, it is said: "The Court can perceive no substantial reason for this distinction. The prevailing inducement for considering a promise to accept, as an acceptance, is that credit is thereby given to the bill. Now this credit is given as entirely by a letter written before the date of the bill as by one written afterwards." The general rule is then declared in these words: "Upon a review of the cases which are reported, the Court is of opinion, that a letter written within a reasonable time before or after the date of a bill of exchange, describing it in terms not to be mistaken, and promising to accept it, is, if shown to the person who afterwards takes the bill on the credit of the letter, a virtual acceptance, binding the person who makes the promise."

The same doctrine is laid down in *Townsley* v. *Sumrall*, 2 Peters, 170–185, by Justice STORY, and it is said to prevail when there are no funds of the drawer in the drawee's hands, and the action may be brought, says NELSON, J., in *Cassell* v. *Davis*, 1 Black's C. C. Reports, by any one who makes advances on the bill upon such assurance of payment.

To the same effect is 1 Daniel Neg. Instruments, §§559, 560, 561; and 1 Edw. on Bills, Notes, &c., §567, and following; *Plummer* v. *Lyman*, 49 Me., 229; *Stiman* v. *Harrison*, 42 Penn. St., 49.

We are referred, however, to section 562, in Mr. Daniel's first volume, who says: "It seems applicable, (the rule,) to the cases of bills payable on demand, or at a fixed time after date, and not to bills payable at or after sight, for in order to constitute acceptance in the latter, a presentment is indispensable, since the time the bill is to run, cannot otherwise be ascertained."

This may be true in a strict sense, an actual presentment and acceptance being necessary to determine the time of payment, as in a sight draft, days of grace are allowed; but the presentation in this case has been made, and not only acceptance refused, but liability denied altogether. The present draft is in precise accord with the direction in the letter, and the plaintiff has advanced his money upon the assurance of its being met, and the governing general rule is, that the drawee thereby undertakes the obligations of the acceptor, and we see no reason why it should not be so in any form of a draft, made in pursuance of the terms of the promise, though in the exceptional cases, an actual presentation may be necessary to fix the time of payment, and authorize the action upon it as an acceptance.

But if a recovery be obstructed upon this ground, it may be effected upon the basis of an assignment of the fund in the drawee's hands. It is a transfer of the whole, not of a part, made known to the appellants before any other disposition is made of it, or any change taken place unfavorable to their liability. The point is expressly decided in *Wheatly* v. *Strobe*, 12 Cal., 92, the opinion being delivered by Justice FIELD, now of the Supreme Court of the United States, in which he says: "The order, though not available against Strobe for want of acceptance, operated as an equitable as-

signment of the demand of Wheatly to Howell. It was given for an antecedent debt, and for the full amount of the demand against Strobe. The consideration was valuable, and there was no splitting of the amount due into different and distinct causes of action, and in such cases, it is well settled that an *order, whether accepted or not,* operates as an assignment of the debt or fund against which it is drawn."

Following this ruling, Mr. Daniel says, that "it seems to be settled by the authorities, that if drawn for the whole amount, it (the draft) operates as an equitable assignment, which will take precedence of any subsequent lien or charge upon them; and that after notice to the drawee will bind him." §431.

As an equitable assignee then, the action can be maintained upon an implied contract to pay.

There is no error.    Judgment affirmed.

No error.                                   Affirmed.