THE CONCORDIA FIRE INSURANCE COMPANY v.
H. F. JOHNSON.·
No. 149.

1. FIRE INSURANCE— *Conditions May Be Waived by General Agent.* The conditions of a policy of fire insurance may be waived by a general agent of the company issuing the same, notwithstanding the policy provides that no agent of the company can waive any of its conditions.

2. ———— *What Constitutes a Waiver.* To constitute a waiver of conditions as to the future use of insured premises, there must be something more shown than mere knowledge of such use on the part of an agent of the insurer; the language and conduct of the agent must be such as reasonably to imply an intention on his part to waive such conditions or to consent to such use.

3. ———— *Unlawful Occupancy Avoids the Policy.* When the policy provides that it shall become void and of no effect if the property insured shall be occupied or used for an unlawful purpose, the prohibited use by a tenant avoids the policy, regardless of notice or knowledge thereof on the part of the insured.

4. ———— *Void Policy not Reinstated by Change in Occupancy.* If a policy of insurance becomes void because the premises have been put to a prohibited use, it is not reinstated and made again effective by the mere fact that such use was discontinued before the loss occurred.

MEMORANDUM.—Error from Wyandotte court of common pleas; T. P. ANDERSON, judge. Action by H. F. Johnson against The Concordia Fire Insurance Company on a policy of insurance. Judgment for plaintiff. Defendant brings the case to this court.

Reversed. The opinion herein, filed July 8, 1896, states the material facts.

*Johnson & Lucas*, and *Hiram Stevens*, for plaintiff in error.

*McGrew, Watson & Watson*, for defendant in error.

The opinion of the court was delivered by

GARVER, J.: The Concordia Fire Insurance Company issued a policy of insurance September 12, 1889, insuring H. F. Johnson against loss by fire on a certain building owned by him in Kansas City, Kan., for a period of one year to the amount of $1,500. The property insured was destroyed by fire July 11, 1890. November 12, 1890, this action was commenced in the court of common pleas of Wyandotte county to recover the amount of said policy. On a trial had by jury, a verdict was returned and judgment rendered in favor of the plaintiff for the full amount of plaintiff's claim. Of this judgment the insurance company complains, assigning for error various rulings of the court occurring upon the trial.

The main contention of the insurance company is, that by reason of certain conditions of the policy it had been released from liability, and the policy had become void prior to the time of the fire. The principal matters relied upon are the conditions with reference to incumbrances, other insurance, change of occupancy, and unlawful use. The policy provides that it shall become void and of no effect if, without the consent of the company, the property shall become incumbered, if other insurance shall be taken thereon, if the premises shall at any time be occupied or used for any purpose different from that written in the policy, if the premises shall become vacant or unoc-

cupied, or if they shall be occupied or used for any purpose contrary to and in violation of any law or police ordinance. It contains the further provision that no agent of the company is authorized to waive any of the conditions therein printed. The policy was written and issued by one Robert L. Marshman, the duly commissioned agent of said company located at Kansas City, Kan., and recited that the building insured was occupied as a schoolroom. The evidence shows that about January 1, 1890, the building ceased to be used for school purposes, and remained vacant and unoccupied until the following April, when it was rented to one Henry Reed, who took possession and occupied the same until the time of the fire; that after the issuance of the policy in question the plaintiff placed a mortgage upon the premises for $600; that he also took out another policy of insurance for $1,800, in the Niagara Insurance Company. The evidence also tends to show that the premises were occupied by Reed in the conduct of an unlawful business — that of gambling — and that they were so used up to the time when the building was destroyed. The principal furniture in the house consisted of billiard-, pool- and gambling-tables, and gambling devices of different kinds. The gambling appears to have been conducted principally by one William Tillman, but with Reed's knowledge and consent. About June 7, 1890, in a raid by the police of Kansas City, a large number of men were arrested in the house, who were at the time engaged in a gambling game known as "craps." This the plaintiff claims was the first information he had that the house was being so used, and that he immediately notified the occupants that such use would not be permitted. Tillman, however,

testified that the building was thereafter used the same as before.

The terms and conditions of a contract of insurance, the same as of any other contract, are binding upon the parties thereto, and must control in the determination of their respective rights. The defendant insurance company had a right to require, as the condition upon which its contract of indemnity should continue, that the hazard or risk should remain unchanged from what it was when the policy was written. It had a right, also, within reasonable limits, to stipulate what should be regarded as an increased hazard, and that if at any time such existed the policy should become null and void. But while this is so, all the conditions and provisions were subject to change, and might be waived by the party for whose benefit they were inserted. There was sufficient evidence with reference to the mortgage, the additional insurance and the change of occupancy of the building to show that, as to them, there had been a waiver by the company, through its agent. Counsel, however, contend that Marshman, the agent, had no authority to waive any of the conditions of the policy, and that such want of authority was known to the plaintiff. With this contention we cannot agree. Whatever the rule may be elsewhere, it is well settled in this state that an agent such as Marshman is shown to have been can bind the company by a waiver of the conditions of a policy issued by him, and that a general limitation upon the authority of all agents of the company, such as is contained in this policy, is nugatory. (*German Ins. Co. v. Gray*, 43 Kan. 497 ; *Phenix Ins. Co. v. Munger*, 49 id. 178 ; *Long Island Ins. Co. v. G. W. Mfg. Co.*, 2 Kan. App. 377.)    To constitute a waiver, how-

ever, there must be something more than mere knowledge on the part of the agent. His language or conduct must be such as to show an intention to waive the particular condition of the policy which is the subject of controversy, or to evidence his consent to any change made which affects the hazard of the risk, when consent is necessary. In this respect the instructions of the court are open to objection.

A more serious question is presented concerning the unlawful use of the premises. The insurance company contracted that it should be relieved from all liability for loss, if the premises were used in a manner prohibited by the policy. An unlawful use is expressly designated as an increased hazard and risk which the insurer will not assume. On his part, the assured binds himself that the premises shall not be put to the prohibited use. Having control of the property, it is not unreasonable to hold him responsible for the nature of its occupancy and for the consequences of the acts of those who have occupied it with his permission. If his tenant, or the person in possession with his consent, does that which the policy says shall forfeit its benefits, his knowledge of the doing of the forbidden thing is immaterial. If done by him, or by one occupying the premises with his assent, it is sufficient. (*German Ins. Co. v. Comm'rs of Shawnee Co.*, 54 Kan. 732.) We do not think that the mere fact of occasional gambling in the building could of itself be said to be making an unlawful use thereof within the meaning of this condition of the policy. Something of a more habitual or permanent character is doubtless contemplated. With reference to unlawful use, and knowledge thereof by the assured, the court instructed the jury as follows:

"If gambling-tables were set up and used for

that purpose, and continued for some considerable length of time, then, I say to you, the plaintiff could not excuse himself by pleading ignorance of that fact. While he would not be charged with the occasional violation of the law, when done without the plaintiff's knowledge, yet he would be charged if that was one of the principal uses that the building was put to, and for such length of time that a reasonably prudent man ought to have been aware of what was going on in the building. But, though it may have been used for such purpose some time before the fire, and it was not being used for any such purpose at the time of the fire, and the fire had no connection with such use of it, then, I say to you that that fact alone, while it would suspend the force and effect of the policy during the illegal use of the premises, yet, if that had ceased some time prior to the time of the fire, that of itself would not avoid the policy."

This instruction, we think, was erroneous and misleading. In the first place, it tells the jury that the unlawful use of the premises would not avoid the policy unless the plaintiff either had actual knowledge thereof, or it had continued for such a length of time that he must, as a reasonably prudent man, be presumed to have known of the same. In the next place, the jury is instructed that the unlawful use of the building would not avoid the policy, if it was not being so used at the time of the fire and the fire had no connection with such use. As to the knowledge of the plaintiff, this instruction is erroneous, under the authority of *German Ins. Co. v. Comm'rs of Shawnee Co.*, supra. Neither do we think it necessary that any connection should be shown between the fire and the unlawful use. The insurance is forfeited because of the recognized increase of the risk which such use naturally occasions, without showing that in the particular instance it contributed to the loss. The ex-

press contract of the parties is, also, that the unlawful use shall render the policy void and of no effect; not that it shall merely suspend it during the time it is so used. That being the contract which the parties themselves have written, a court has no right to make for them another and different one. If the policy has, for such reason, become null and void, it cannot be revived and again become effective without anything further being done between the parties. (*Insurance Co. v. Gunther*, 116 U. S. 113; *Bond v. Endicott*, 149 Mass. 282; May, Ins. § 245.) Moreover, in this case, the evidence shows that on the eve of the fire the same parties occupied the premises with the same furniture and appliances, and, as stated by Tillman, with the same use of the building. Even conceding that a prior unlawful use of insured premises would not affect the insurance as to a loss which occurred after the unlawful use had ceased, yet such cessation must be something more than a mere temporary quitting for the night. This distinction the court failed to make.

Other errors are assigned upon the rulings of the court, but, as they are not likely to occur upon another trial, we deem it unnecessary to consider them.

The judgment will be reversed, and case remanded for a new trial.

All the Judges concurring.