WALTER P. BURRUS and wife, MAGGIE L. BURRUS, v. THE
LIFE INSURANCE COMPANY OF VIRGINIA.

(Decided February 21, 1899).

*Policy—Premium Drafts—Cancellation—Damages.*

1. Where by arrangement between the insured and the company,
   the premiums, as they matured, were to be paid by sight
   drafts on the insured; and for the premium due on November
   25, 1894, ($16.90) a sight draft was drawn through a Rich-
   mond bank, as usual and forwarded to New Bern for collection
   on November 23—upon the back of which were written the
   words—"Accepted. Payable at the Farmers' and Merchants'
   Bank, Newbern, N. C." Presentment for acceptance was due,
   before default in payment was incurred.

2. Sight drafts are entitled to grace—maturity occurring three days
   thereafter. *Nimocks v. Woody,* 97 N. C., 1.

3. Where the bank collector failed to make due presentment, and
   the draft was returned uncollected, the insurance company
   ought to have accepted payment tendered by the plaintiff on
   December 1, and not to have cancelled his policy.

4. Where a policy is wrongfully cancelled, the insured may recover
   premiums paid with interest, as "money had and received
   to his use;" or upon the implied promise to save him harm-
   less, the measure of damages being the amount necessary to
   enable him to obtain another policy. *Brasswell v. Ins. Co.,*
   75 N. C., 8.

CIVIL ACTION against the defendant for wrongfully can-
celling a policy on plaintiff's life, which he had taken out for
the benefit of his wife, tried before *Brown, J.,* at May Term,
1898, of CRAVEN Superior Court. The complaint claimed a
return of all premiums paid, with interest.

The answer sets up as a defense the non-payment of a bi-
monthly premium, due November 25, 1894, for the sum of
$16.90. The policy was a five-year policy, with privilege of
renewal, at increased premium—premiums payable bi-

monthly. In settlement of these premiums, it was arranged that the company should draw sight drafts on the plaintiff through a Richmond bank, which transmitted it to New Bern, where he resided, for collection. This course had been pursued for years, the collecting bank at New Bern being the National Bank of New Bern up to November, 1894. The draft for the premium then payable was transmitted to Farmers' and Merchants' Bank of New Bern. Upon it was written the words, "Accepted. Payable at the Farmers' and Merchants' Bank of New Bern, N. C."

The plaintiff testified that he received no notice of this draft until after it was returned uncollected, and that upon receiving information of it, he forwarded his check to the Company, on 1st December, 1894; but they refused to receive it and sent it back.

The evidence was conflicting as to whether the bank collector made proper effort for presentment of the draft to the plaintiff. His Honor ruled that it was incumbent on the defendant to prove this, and that the presentment, under the circumstances, should have been, in the first instance, for acceptance.

Defendant excepted.

His Honor instructed the jury that in event of recovery, the plaintiff would be entitled as compensation to a return of the premiums paid, with interest.

The defendant excepted.

Verdict for plaintiff—judgment accordingly.

Defendant appealed.

*Messrs. MacRae & Day, W. W. Clark* and *O. H. Guion,* for defendant (appellant).

*Messrs. Simmons, Pou* and *Ward,* for plaintiff.

Montgomery, J.   The plaintiff's (husband's) life was insured in the defendant company for the benefit of the *feme* plaintiff, and a premium became due on November 25, 1894. The same was not paid at that day, and the defendant refused to reinstate the plaintiff's policy unless he would submit to a re-examination and be found to be in good health, although he had sent the amount of the premium to the company on the first of December following.   The plaintiff refused to be re-examined and insisted that the company had unlawfully cancelled the policy.   The plaintiff alleged that the defendant, after the issuing of the policy, agreed with him that the company would draw on him sight drafts for the premiums necessary to keep the policy in force, and to have the drafts presented to him in New Bern, N. C., for payment, and that in pursuance of that agreement, the defendant, for years, prior to November 25, 1894, did draw the drafts and they were paid.   That agreement was admitted by the defendant, but with the statement that it was made entirely for the plaintiff's convenience and with a denial that the drafts were to be presented to the plaintiff in New Bern for payment; the defendant further said that the defendant was to draw through its bank in Richmond, Va., and that bank was to send the draft to New Bern for collection.   For the payment which was to fall due on November 25, 1894, the defendant drew in Richmond, Va., a draft on the plaintiff, payable at sight to the order of the Merchants' National Bank of Richmond, Va.   The draft was sent by that bank to the Farmers' and Merchants' Bank, New Bern, N. C., for collection, and on the back of the draft there was written, "Accepted.   Payable at the Farmers' and Merchants' Bank, New Bern, N. C." The collector of the last-mentioned bank went where he thought the plaintiff could be found on the 23d of November, but did not see him nor any person authorized to act for him.

His Honor instructed the jury fully on the law upon the evidence in respect to the agreement concerning the change of place of payment of premiums, the custom of the defendant in respect to the collections of premiums in New Bern through the bank there, and as to the effect in law of such collections. To these instructions there was no exception by the defendant. In reference to the right of the company to cancel the policy of the plaintiff, his Honor charged the jury that "If the Merchants' and Farmers' Bank used due diligence in presenting such draft and complied with the law in that respect, then the insurance company, when the draft was returned unpaid, had a right to cancel the policy of insurance and such cancellation would have been rightful and not wrongful, and, if you so find, you will answer the first issue, 'No.' If, on the contrary, you find that the Merchants' and Farmers' Bank was not diligent with the requirements of the law in presenting the premium draft, then the defendant had no right to cancel the policy and it was the duty of the company to accept the premium afterwards from Burrus." There was no exception to this instruction.

His Honor, on the question of the nature of the draft and the duty of the New Bern bank in reference to its presentation to the plaintiff, said to the jury: "The presentment of a bill of exchange or draft must be made to the drawee or acceptor, or to an authorized agent. A personal demand is not always necessary, and it is sufficient to make the demand at the residence or usual place of business of the drawee, where the presentment is for payment. This draft had not been accepted, and therefore the presentment first to be made by the bank was a presentment for acceptance. It was the duty of the bank collector to be careful, not only to present the draft at the usual place of business, but, if the plaintiff was not in, to assure himself that the person to whom he presented

the draft for acceptance was the authorized agent of the plaintiff." The defendant excepted to this instruction. We find no error in it. By the terms of the policy of insurance, the premium was not due when the bank collector, with the draft, on the 23d, sought the plaintiff. It could not therefore have been a demand for payment which the collector intended to make on the plaintiff. If the collector had found the plaintiff on the 23rd, he could not have made any legal demand for payment; he could only have requested that he sign the instrument, "Accepted. Payable at the Farmers' and Merchants' Bank, New Bern, N. C." The defendant, in carrying out the agreement to draw on the plaintiff at New Bern, through the Richmond bank, as the defendant contends, put the draft in the form of a sight draft. It was not due when the effort was made to present it to the plaintiff, and the paper was to every legal intent a draft for acceptance. The three days of grace were to be allowed after presentment and acceptance, and time of payment could not be known until acceptance. It is not only so in law, but on its back the intention of the drawer to make it a draft for acceptance was manifest. His Honor was right in his instruction that the draft had not been accepted and that the presentment first to be made was a presentment for acceptance. *Nimocks v. Woody*, 97 N. C., 1.

It was agreed that the Court should answer the second issue, which was as to the damage the plaintiff had sustained by reason of the cancellation of his policy by the company. The Court followed the rule laid down in *Brasswell v. Insurance Co.*, 75 N. C., 8, *and Lovic v. Life Association*, 110 N. C., 93. In the first-mentioned case the Court said: "If the defendant was in default by cancelling the policy positively and peremptorily, the plaintiff has a right to recover back the amount paid as premium and interest thereon, as money had

and received for his use,' or upon a promise of the defendant to indemnify and save harmless, which the law implies from the wrongful act of the defendant in the cancellation of the policy, in which case the measure of damage would be the amount necessary to enable the plaintiff to obtain another policy, if so minded, which of course, would be much higher in respect to the premium, inasmuch as he is several years older than he was when he first obtained the policy; but the case need not be complicated by this consideration, as the plaintiff is content to take back his money with interest, and be quits of all further connection with the defendant." In the present case, the plaintiff has adopted the same course, and we are not disposed to change the rule adopted in Braswell's case.

The defendant, however, contended that the policy in this case was different in kind from the policy in the other cases referred to, and that the same rule ought not to apply. The policy was of the following kind: "The policy of insurance is for a term of five years, the said term ending five years from the date of this policy, at noon, and all benefits arising under it to the insured or any other person, or persons, will then terminate; but the policy, with all its benefits, provisions and requirements named therein, will be renewed by the company for the term of five years at the completion of the period above named, upon the payment to it of the premium therefor on or before the date of termination; and of the bimonthly payment of the same sum every year for five years at the dates mentioned in this policy, which sum shall be at the present published rates of the company for the actual age, and all provisions, requirements, specifications and benefits referred to in this policy, including the right of renewal for subsequent five-year periods, will be continued in force during the life of the insured as in the original contract, except

that when the renewal is at age of sixty or over, the premium thereafter paid shall be at the uniform rate as at age of such renewal."

We are of the opinion that those features of the policy ought not to change the rule. To be sure, they provide that the benefits from the policy terminate at the end of periods of five years, but it permits continuous renewals for other periods of five years during the life of the insured, the only condition or limitation being the increased premiums at each successive period. No re-examination of the insured is required and the defendant company has no option to cancel the policy, provided the insured shall pay the increased premiums at the beginning of each period of five years, as required under the terms of the policy. The only possible effect, as we see it, of the feature of the periods of five years, provided for in the policy, upon the meaning and intent of the policy, is to increase the premiums at the several stages of five years instead of having fixed them at a certain sum in the beginning, and therefore the measure of damages which the Court applied in Braswell's case is the proper rule.

Affirmed.