GWALTNEY v. PROVIDENT SAVINGS LIFE ASSURANCE
SOCIETY.

(Filed June 11, 1893.)

1. CONTRACTS—*Parol Agreement—Fraud—Insurance.*

The rule that parol agreements are merged in a written contract is not applicable where a written contract was by fraud or mistake executed differently from the terms of agreement.

2. WITNESSES—*Evidence—Competency—Insurance—The Code, Sec. 590.*

In an action against an insurance company to recover premiums paid on a life insurance policy, the assured may testify as to a conversation between himself and the deceased agent of the defendant company.

3. INSURANCE—*Contracts—Parol Agreement—Estoppel.*

The receipt of an insurance policy, under the circumstances in this case, without reading it does not bind the assured so as to prevent him from proving a parol agreement between himself and the agent of the company relative to the policy.

4. INSURANCE—*Policy—Principal and Agent—Waiver—Contracts.*

A general agent of an insurance company may waive any stipulation in a policy, notwithstanding a clause in the policy forbidding it.

5. EXCEPTIONS AND OBJECTIONS—*Appeal—Instructions—The Code, Sec. 550.*

Exceptions to a charge must be stated separately, in articles numbered, and no exception should contain more than one proposition.

6. INSURANCE—*Premiums.*

Where an insurance policy is wrongfully cancelled, the amount of the recovery by the assured is the premiums paid with interest thereon from the date of payments.

MONTGOMERY, J., dissenting.

ACTION by W. R. Gwaltney and wife against the Provident Savings Life Assurance Society, heard by Judge *B. F. Long* and a jury, at February Term, 1903, of the Superior Court of CATAWBA County. From a judgment for the plaintiffs, the defendant appealed.

*T. M. Hufham* and *E. B. Cline,* for the plaintiffs.
*Maxwell & Keerans,* for the defendant.

CLARK, C. J.   This action was brought to recover the premiums, with interest thereon, paid on a life insurance policy issued to the plaintiff by the defendant in 1899, through its general agent in this State.   The complaint alleges that said agent, in soliciting the application, agreed to issue to the plaintiff a level rate policy, whereas the one issued increased the premiums with age.   The application on its face is for a policy "upon the annual renewal plan with surplus applied to keeping premiums level, participating premiums payable quarterly," and the policy provides for "payment of the annual renewal premium for the actual age attained, in accordance with schedule printed on next page of this policy for each $1,000, except as reduced by the application of the surplus and guaranty fund," and at the foot of said table in the policy is the following:   "Note.—Provided the mortality in this Society shall be as favorable in the future as it has been in the past in the largest and best of the other companies (thus far it has been more favorable), this insurance will be extended and renewed during the whole expectation or probable life time of the insured at the rate of premium charged for the first year only of the policy."

There were thirteen issues submitted to the jury, which with the responses thereto establish the following state of facts:   "That one Jones was the general agent in this State of the defendant at the time the application was made and the policy issued, that as such general agent of the defendant, by false and fraudulent representations, he induced the plaintiff to make the application and take out the policy of insurance upon an agreement made at and before the delivery of the policy, that the premiums per quarter should be $22.41 for the life of the assured and no more, and thereby induced

the plaintiff to accept the policy; that the application was filled out by the defendant's general agent (Jones) and the plaintiff was induced to accept the policy and pay $22.41 per quarter, and was misled and prevented from examining the terms of the policy at the time of delivery and till demand of increase of premium, by reason of false, deceitful and fraudulent representations of said Jones at and before the delivery of the policy; that the defendant received the premiums from the plaintiff at the rate of $22.41 for nine years and then demanded an increase of premiums to $28.01 per quarter, which the plaintiff paid, but under protest, for two years, when the amount demanded was raised to $41.73 per quarter, and upon the plaintiff's refusal to pay the same the defendant discontinued the policy and held all the premiums paid to that date; that after the execution and delivery of the policy, the defendant through its general agent, agreed to continue the policy upon the payment of $22.41 per quarter during the life of the plaintiff, waiving the provisions in the policy which permitted an increase in the premiums; that the defendant at the time of issuing the policy had notice of the special contract with the plaintiff, made by Jones; that the policy was not issued in accordance with the aforesaid verbal contract with the defendant's general agent; that the increase in rates was contrary to said agreement though permitted by the terms of the policy, which the plaintiff had retained in his possession from its delivery to him." There were allegations and evidence justifying the above verdict, if the jury believed the evidence.

The defendant objected to the evidence by the plaintiff of the conversations and agreements between him and the defendant's general agent, before or cotemporaneous with the delivery of the policy, because such verbal agreements were merged in the written application and policy, and also

under The Code, Section 590, because the said general agent Jones, was dead at the time of the trial.

The rule that parol agreements are merged in a written contract has no application when, as here, the allegation is that the written contract was by fraud (or mistake) executed differently from the terms of said agreement. *Powell v. Heptinstall,* 79 N. C., 207; *McLeod v. Bullard,* 84 N. C., 527; *Bank v. McElwee,* 104 N. C., 305. The plaintiff's testimony is substantially set out in his complaint, which is summarized in the opinion in this case, 130 N. C., at p. 630. It appeared in the plaintiff's evidence, if believed, that the plaintiff was ignorant of the terms and provisions of life insurance policies, and that the agent put him off his guard by agreeing in advance that the policy should be for level premiums, and hence, the plaintiff relying on said agent's representations did not scrutinize the policy, but the agent handed it to him on the street when there was no opportunity to examine it, telling him "here is your policy." From which the plaintiff understood it was the policy agreed on. The receipt of the policy under circumstances similar to these, without reading, was held not binding on the assured. *Fitchner v. Fidelity Asso.,* 103 Iowa, citing numerous cases at p. 279; *Kister v. Ins. Co.,* 128 Pa., 553; 5 L. R. A., 646; 15 Am. St. Rep., 696; *McMaster v. Ins. Co.,* 183 U. S., 37; a deed under such circumstances can be avoided between the parties. *Medlin v. Buford,* 115 N. C., 260. The premiums were collected on the level of $22.41 per quarter for nine years, and not till the plaintiff was too old to obtain insurance in any other company was the premium raised to $28.01, which he paid for two years under protest (thus reserving his rights), and then suddenly the premium was jumped to $41.73 per quarter, being very nearly double the original rate, which the plaintiff testified, and the jury find, the general agent promised him should not be raised. Such

promise was not such an unreasonable one that the plaintiff as an ordinarily prudent man should have refused to rely upon it, for the table annexed to the policy and referred to therein contained the note above set out that unless there was unforeseen mortality the company expected to maintain the level rate of the first premium in all cases. The plaintiff testified that his policy was taken out on an express agreement that this level rate should be maintained in his case.

The testimony of the agreement and conversations of the plaintiff with the defendant's agent was competent, notwithstanding the death of the agent. *Roberts v. Railroad,* 109 N. C., 670; *Sprague v. Bond,* 113 N. C., 551.

The plaintiff further testified, and the jury found, that in December, 1890, after the policy was issued, the defendant through its general agent agreed to renew and extend the policy for the term of the plaintiff's life at a level premium of $22.41, "and waived the conditions of said policy providing for an increase of the rate of premium for age attained." The authorities are numerous that a general agent can waive any stipulation in the policy notwithstanding a clause in the policy forbidding it, for he can waive that clause as well as any other. A party can not bind himself not to agree to modifications in a contract, and a corporation acts through its agents in the scope of their agency, and the agency here was a general agency. *Wood v. Ins. Co.,* 149 N. Y., 385; 52 Am. St. Rep., 733; *Ins. Co. v. Gray,* 43 Kan., 504; *Railroad v. Ins. Co.,* 105 Mass., 570; 1 May on Ins. (4th Ed.), Sec. 151; *Rainer v. Ins. Co.,* 74 Wis., 98; *Ins. Co. v. Johnson,* 4 Kan. App., 10; *Ins. Co. v. Wilkinson,* 80 U. S., 234; *Ins. Co. v. McCain,* 96 U. S., 84.

The issues submitted arose upon the pleadings, and as every phase of the controversy could be presented thereon they were not objectionable. Clark's Code (3 Ed.), pp.

GWALTNEY v. ASSURANCE SOCIETY.

474-476; *Patterson v. Mills,* 121 N. C., 266. What has been already said disposes of the exceptions for refusal of instructions and refusal to non-suit the plaintiff upon the evidence.

The exceptions to the charge are without merit, but we must further say that they are not properly presented for consideration. Each exception to the charge is required by the statute (The Code, Sec. 550) to be "stated separately in articles numbered," and no exception should contain more than one proposition, else it is not "specific" and must be disregarded. Clark's Code (3rd Ed.), pp. 513, 514, 773, and numerous cases there cited. It is not a compliance with the statute to divide the charge (as here) into four sections, each containing many propositions and divers paragraphs, and to except *seriatim* to each of those four sub-sections of the charge. The object of the statute is to give the appellee information as to the errors, by specific exceptions, so that he may prepare himself to meet them on the argument here.

The policy having been wrongfully cancelled, the amount of the recovery is the return of the premiums with interest on each from the date of payment. *Braswell v. Ins. Co.,* 75 N. C., 8; *Lovick v. Life Asso.,* 110 N. C., 93; *Burrus v. Ins. Co.,* 124 N. C., 9; *Hollowell v. Ins. Co.,* 126 N. C., 398; *Strauss v. Life Asso., Ibid,* 976; 54 L. R. A., 605; 83 Am. St. Rep., 699; S. C., 128 N. C., 468.

Affirmed.

DOUGLAS, J., concurring. I can not dissent from the opinion of the court because it is sustained by the law and the verdict of the jury, but like my brother Montgomery, I am deeply impressed with the fact that the agent Jones is dead, and that the plaintiff alone is left to tell the story of what occurred between them. So much is assumed that is left unsaid in ordinary conversations that misunderstandings

frequently occur between men both of whom are honest and truthful. We have all doubtless noticed contradictions in testimony between men of equal reputation and apparently of equal knowledge. The only way I can account for this is that men are unconsciously swearing to legal conclusions. For instance, A and B have a long conversation, of which the exact words are probably remembered by neither. A swears that B agreed to do a certain thing, while B swears he did not. A, who is probably swearing, not to B's words, but to the effect produced on his own mind by the conversation, thinks there was a legal contract; while B, who perhaps regarded the entire conversation as an unclosed negotiation, is equally positive that there was no contract. Under such circumstances the jury alone can determine the question. Where one party is dead and the uncontradicted evidence comes alone from the other side, the jury is almost compelled to find for the survivor. To remedy this hardship the Legislature passed an Act known as Section 590 of The Code. If Jones' estate or any one claiming under him were a party to this action, the plaintiff would not be permitted to testify as to any transaction with Jones, but as his estate has no *pecuniary* interest in the suit, which is against the insurance company alone, such testimony is competent. That the *moral* interest of the deceased and his family can not be considered is one of the hardships of the law which we are powerless to remedy. It is but just to the plaintiff to say that the terms of the policy itself were apt to mislead him, and I am surprised that the defendant company should make even a conditional representation which is apparently so utterly incapable of fulfilment.

MONTGOMERY, J., dissenting. The first issue submitted to the jury was in these words: "Was Jones the general agent of the defendant company at the time alleged in the complaint?"

I think the judge erred when he refused to charge the jury, as he was requested to do by the defendant, that if they believed the evidence they should answer the issue in the negative. From the deposition of William E. Stevens, secretary of the defendant company, it appears that the agent Jones at Greensboro was authorized to receive applications for insurance, to deliver policies to applicants after their issuance by the society, and to collect and report premiums on the same; that Jones had no authority or power to issue policies or to change, waive or alter their terms in any way, and that in this particular instance he had nothing to do with the issuance of the policy except to deliver it to the plaintiff after it had been sent to him (Jones) from the New York office. It appeared also from the evidence of J. N. Ballentine, assistant secretary of the company, that the agent Jones was appointed to solicit applications and to deliver policies that would be written, to collect the premiums required thereon and to appoint local agents, and that he had no other powers; that all policies were issued from the New York Office where the applications were passed upon and were then sent out to the agent for delivery by them to the insured; that the term "general agent" was merely an office distinction between a territorial and local agent, and that a general agent had no different powers from a local agent about writing policies and sending on applications. The evidence of the plaintiff on this point was that he knew no limitations of the authority of Jones and supposed he had full power to act for the company; and that Jones held himself out as the general agent of the company.

In *Berry v. Insurance Co.*, 132 N. Y., 49; 28 Am. St. Rep., 548, there was a change by the general agent in a material matter in the policy, and the company was held to have waived that condition of the policy. But it is affirmatively stated in that case that the agents "were general agents, having authority to make contracts without reference to the home

office, and their power to waive conditions in the policy was co-existent with that of the company itself." The plaintiff in this case well knew that Jones did not intend to issue the policy himself, but on the contrary he knew that it had to be issued at New York, the home of the company, and sent back to Jones at Greensboro to be delivered to the plaintiff. *Berry v. Ins. Co., supra,* was quoted by this court in *Grubbs v. Ins. Co.,* 125 N. C., 389, and the court said in connection with it: "It is needless to say that the expression 'general agent' occurring in the above opinion was used in its legal sense as implying general powers, and not in the geographical sense in which it is usually employed by insurance companies." The reputation of the agent Jones was destroyed upon evidence submitted to the jury after he was in his grave, and his family, if he left one, are to bear the reproach although Jones' statement of the matter was not before the court. If the evidence of the plaintiff himself, who testified also that up to the trouble about the policy he knew nothing about Jones except what was good, and that of A. A. Shuford and the language of the note attached to the policy be considered together, it might be concluded, without injury to the character of either, that there was a mutual misunderstanding between the plaintiff and Jones, the agent, on the question involved in this litigation. That note was in these words: "Provided the mortality in this society shall be as favorable in the future as it has been in the past in the largest and best of the other companies (thus far it has been more favorable), this insurance will be extended and renewed during the whole expectation or probable life time of the insured at the rate of premium for the first year only of the policy."